740 So.2d 127 (1998)
STATE of Louisiana
v.
Robert M. SHEEHAN.
No. 97-KA-2386.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1998.
Rehearing Denied February 17, 1999.
*128 Harry F. Connick, District Attorney, Susan Erlanger Talbot, Assistant District Attorney, New Orleans, Louisiana, Attorneys for State.
Louis A. Heyd, Jr., New Orleans, Louisiana, Attorney for Defendant.
Court composed of Judge WILLIAM H. BYRNES III, Judge JOAN BERNARD ARMSTRONG, and Judge JAMES F. McKAY, III.
BYRNES, Judge.
Pursuant to his guilty plea under State v. Crosby, 338 So.2d 584 (La.1976) for possession of crack cocaine, a violation of La. R.S. 40:967(C), Robert M. Sheehan reserved his right to appeal the trial court's denial of his motion to suppress.
In the early evening of January 25, 1997, Officer Raymond Veit responded to a call from the ATF Crime Hotline. Without giving a description of the men, the caller said that a group of men standing on the corner of Barracks and Treme Streets was selling narcotics. When the officer drove to the intersection, he observed several people sitting on a step in the 1200 block of Treme Street and one man standing in front of them. The man standing noticed the police car and ran down Treme Street. Officer Veit and his partner, Agent Harry Bernard stopped to conduct an interview with the men. The officer asked them to put their hands on the wall so that he could perform a pat down. Agent Bernard removed a partially opened pack of cigarettes from Sheehan's shirt pocket. In the cigarette package, the agent saw crumpled cellophane in which he found a white, rocklike substance. Officer Veit acknowledged that Sheehan did not attempt to run, and he was not observed in any illegal activity. The officer had no prior knowledge of the defendant.
Agent Harry of the Drug Enforcement Administration testified that when he and Officer Veit responded to the complaint of drug sales at the corner of Barracks and Treme Streets on January 25, 1997, one member of the group sitting near the corner ran. The remaining men were patted down for weapons. While Agent Bernard was searching Sheehan, Agent Bernard noticed a cigarette package in Sheehan's shirt pocket. The agent searched the package for a razor blade and found crack cocaine. When he was arrested, Sheehan stated: "He planted the stuff on me. What is it, you've got a quota of white guys you've got to arrest this time." In searching for a razor blade, the agent described the cigarette pack as being partially opened. He looked in it and saw the small cellophane pack containing cocaine inside the package.
On June 20, 1997 the trial court found probable cause and denied Sheehan's motion to suppress. This court denied Sheehan's application for writ of certiorari in State v. Sheehan, 97-K-1464 (La.App. 4 *129 Cir. 8/12/97) (unpublished) (Judge Murray dissenting), stating that the defendant had adequate remedy on appeal. After the trial court denied Sheehan's motion for reconsideration of his motion to suppress, Sheehan entered a plea of guilty as charged under Crosby, supra, reserving his right to appeal. He was sentenced to one year in the Department of Corrections, suspended, with one year active probation, and fines of $800 to the Judicial Expense Fund, $200 to the Indigent Transcript Fund, and drug testing for 20 weeks. Sheehan's appeal followed.
At issue is whether the officers properly seized the contraband based on reasonable suspicion to make an investigatory stop of the defendant, and conduct a pat down search. A law enforcement officer may stop a person in a public place whom he reasonably believes is committing, has committed, or is about to commit an offense. La.C.Cr.P. art. 215.1. If an officer stops a person pursuant to art. 215.1, the officer may conduct a limited pat down frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. La.C.Cr.P. art. 215.1(B). "Reasonable suspicion" for an investigatory stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient articulable facts within his knowledge to justify an infringement of the suspect's rights. State v. Matthews, 94-2112 (La.App. 4 Cir. 4/26/95), 654 So.2d 868; State v. Vance, 93-1389 (La.App. 4 Cir. 2/25/94), 633 So.2d 819.
In assessing the reasonableness of an investigatory stop, the court must balance the need to search and seize against the invasion of privacy that the search and seizure entails. State v. Tucker, 604 So.2d 600 (La.App. 2 Cir.1992), affirmed in part, reversed in part on other grounds, 626 So.2d 720 (La.1993); State v. Washington, 621 So.2d 114 (La.App. 2 Cir. 1993), writ denied, 626 So.2d 1177 (La. 1993). The intrusiveness of a search is not measured so much by scope as it is by whether it invades an expectation of privacy that society is prepared to recognize as reasonable. Twenty-Three Thousand Eight Hundred Eleven and No/100 ($23,811) Dollars in U.S. Currency v. Kowalski, 810 F.Supp. 738 (W.D.La.1993).
In reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549. The reputation of an area is an articulable fact upon which an officer can rely and which is relevant in the determination of reasonable suspicion. State v. Richardson, 575 So.2d 421 (La. App. 4 Cir.1991), writ denied, 578 So.2d 131 (La.1991). Flight, nervousness, or a startled look at the sight of a police officer may be one of the factors leading to a finding of reasonable cause to stop under La.C.Cr.P. art. 215.1. State v. Belton, 441 So.2d 1195 (La.1983), certiorari denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Noto, 596 So.2d 416 (La.App. 4 Cir.1992); State v. Preston, 569 So.2d 50 (La.App. 4 Cir.1990).
In State v. Huntley, 97-0965, p. 3 (La.3/13/98); 708 So.2d 1048, 1050, the Louisiana Supreme Court found that: "A reviewing court must take into account the `totality of the circumstancesthe whole picture,' giving deference to the inferences and deductions of a trained officer that might well elude an untrained person.... The court must also weigh the circumstances known to the police `not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.'..."
In State v. Ganier, 591 So.2d 1328 (La. App. 4 Cir.1991), police officers were patrolling a housing project in New Orleans known to be a center of drug trafficking. The juvenile saw the officers, turned "suspiciously", *130 began to walk away slowly, and then began to run. The officers chased the defendant until he was apprehended. This court found that two factors were sufficient to justify a stop of the defendant: the area's reputation for drug trafficking, and the suspicious actions of the defendant. This court noted:
... Drug activity and crimes which it generates have become a major problem endangering innocent people and severely taxing police resources. Although an innocent individual who has nothing to hide from police might flee so that such flight would be irrational, the action of fleeing in itself is inherently suspicious and justifies an investigation by a police officer exercising common sense. This is not a case of a man merely standing on a street corner who is detained by the police simply because he is there. State v. Ganier, 591 So.2d at 1330. [Emphasis added.]
The test for determining whether one has a reasonable expectation of privacy is not only whether the person had an actual or subjective expectation of privacy, but, rather whether that expectation is of a type which society at large is prepared to recognize as being reasonable. State v. McKinney, 93-1425 (La.App. 4 Cir. 5/17/94), 637 So.2d 1120, writ denied 97-1339 (La.12/19/97), 706 So.2d 444; State v. Lambright, 525 So.2d 84 (La.App. 3 Cir. 1988), writ denied 530 So.2d 83 (La.1988). Deference should be given to the experience of the policemen who were present at the time of the incident. State v. Short, supra. A certain look or gesture may not mean anything to the ordinary person; however, a policeman has sound judgment based on long experience to interpret these acts. An officer should react for his safety under the conditions and events as they occur.
The officers relied on specific, articulable facts in determining whether there was reasonable cause for an investigatory stop. In the early evening of January 25, 1997, the agents were dispatched following an anonymous informant's tip just received by the ATF crime hot line. The informant stated that on a routine basis a group of males stand at Barracks Street and Treme Street and sell narcotics to passing vehicles and pedestrians. The tip was corroborated by Officer Veit and Agent Harry when they approached the intersection in their vehicle. When they saw one man standing with several people sitting on a step in the 1200 block of Treme Street, the officers' suspicions were raised when they observed that the standing man fled. Even though the defendant himself did not flee, the action of the other subject fleeing cast a cloud of suspicion that an illegal activity was taking place.
The facts in the present case provide more than a situation where a person is stopped by a police officer just because he is on the street. It is well known to law enforcement officers that people involved in narcotics activity stay outside in the street and conduct sales to people in vehicles and pedestrians who pass by. The officer had reasonable suspicion to stop the defendant. The officers had just received a complaint of narcotic activity on the same corner. The agents and officers immediately responded to the radioed dispatch based on the tip from the ATF hot line. The officers testified that the location was known as a high drug trafficking area. One of the subjects fled. Under these circumstances, the officer had reasonable suspicion to believe that the subjects were engaging in illegal activity.
In State v. Curtis, 681 So.2d 1287 (La. App. 4 Cir.1996), this court held that contraband can be seized from a pack of cigarettes. The officer reasonably suspected the subject was involved in criminal activity and could be armed. The officer was entitled to conduct a search for weapons. When the suspect reached toward his leg, the officer was justified in investigating the bulge in the suspect's sock. Upon removing the object, the officer discovered a partially opened pack of cigarettes. The *131 officer determined that the pack of cigarettes contained something other than cigarettes. This court found that based on the totality of circumstances, the officer had probable cause to believe that the cigarette pack contained contraband, and seizure of the contents of the cigarette pack was justified. This court noted:
Common sense dictates that a police officer should be permitted to pat-down a suspect who reasonably appears to be dealing drugs. We can take notice that drug traffickers and users have a violent lifestyle, which is exhibited by the criminal element who are generally armed due to the nature of their illicit business. Therefore, a police officer should be permitted to frisk a suspect following an investigatory stop (based on reasonable suspicion) relating to drug activities. The police officers acted reasonably on information, which proved accurate.

Id. at 1292.
In State v. Wartberg, 586 So.2d 627 (La. App. 4 Cir.1991), this court noted that a reasonably cautious policeman was entitled to fear that a subject who is suspected of dealing drugs could be armed and dangerous, and the officer is justified in searching for weapons for his safety and for the safety of other officers.
Because the officers stated that they had just received an anonymous tip, they were in a high crime area, and they thought that the defendant was engaging in illegal activity, in the present case the officers reasonably believed that they were in danger and that the suspect possessed a dangerous weapon so that the pat down search of the defendant was proper under La.C.Cr.P. art. 215.1; State v. Short, supra.
In the present case, when the agent was conducting a pat down search for weapons, through his sense of touch he testified that he felt a cigarette pack. From his past experience of knowing that razor blades are often concealed in cigarette packs, removing and looking at the cigarette pack was a reasonable intrusion designed to discover a weapon. In the interest of protecting himself and the other agents, Agent Harry was justified in looking inside the partially opened cigarette pack that contained something other than cigarettes. In the cigarette pack he saw crumpled cellophane that he properly opened and found a substance that looked like crack cocaine.
Based on the facts and testimony in this case, when the officer saw the substance, the officer had probable cause to believe that the object in the defendant's pack of cigarettes was crack cocaine. There was prior justification for the officer's intrusion into the protected area to make an investigatory stop. Under the totality of circumstances, the intrusiveness of the seizure of the contraband did not invade an expectation of privacy which society is prepared to recognize as reasonable. There was no invasion of the suspect's privacy beyond that authorized by the officer's search for weapons.
Accordingly, the defendant's conviction and sentence are affirmed.
AFFIRMED.
McKAY, J., dissents with reasons.
McKAY, J. dissents with reasons.
I respectfully dissent based on the conclusion that the officers did not have a reasonably articulable suspicion to make an investigatory stop of the defendant and conduct a patdown search, which exceeded its legal limits. The contraband was improperly seized.
The defense contends that the stop and frisk of the defendant was invalid and the seizure of the cigarette pack was unjustified.
La.C.Cr.P. art. 215.1 provides the standard for an investigatory stop; it states:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an *132 offense and may demand of him his name, address, and an explanation of his actions.
In State v. Sneed, 95-2326, p. 3 (La.App. 4th Cir.9/11/96), 680 So.2d 1237, 1238, writ denied 96-2450 (La.3/7/97), 689 So.2d 1371, this court considered application of that article:
An individual may be stopped and questioned by police if the officer has a reasonable suspicion that the person "is committing, has committed, or is about to commit an offense." La.Code Crim. Proc.Ann. art. 215.1. While "reasonable suspicion" is something less than the probable cause needed for an arrest, it must be based upon particular articulable facts and circumstances known to the officer at the time the individual is approached. State v. Smith, 94-1502, p. 4 (La.App. 4th Cir.1/19/95), 649 So.2d 1078, 1082. The officer's past experience, training and common sense may be considered in determining if the inferences drawn from the facts presented were reasonable. State v. Jackson, 26,138 (La.App.2nd Cir. 8/17/94), 641 So.2d 1081, 1084.
Additionally, once reasonable suspicion is found, paragraph B of art. 215.1 provides:
When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
Moreover, while an officer need not be certain that the person is armed, he must be warranted in his belief that his safety or that of others is in danger. State v. Smith, 94-1502 p. 5 (La.App. 4th Cir.1/19/95), 649 So.2d 1078, 1082.
Furthermore, the totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Belton, 441 So.2d 1195 (La.1983), cert. den. Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). The investigative stop must be justified by an objective manifestation that the person stopped is or is about to be engaged in criminal activity or there must be reasonable grounds to believe that the person is wanted for past criminal conduct. State v. Moreno, 619 So.2d 62, 65 (La.1993).
Here the officers received an anonymous tip that drugs were being sold by a group of men in an area known for drug activity. When the officers went to that corner, they saw only a group of men sitting on steps and one man standing in front of the sitting group. As the officers stopped, the standing man ran, but the other men did not try to get away. Those men were ordered to place their hands against a wall while an officer frisked them. This Court must consider whether under these circumstances there was reasonable suspicion to stop the defendant and particularized grounds to frisk him and to seize and search the cigarette pack he was carrying.

THE STOP:
This Court has decided several cases similar to the instant case where a defendant, stopped without having been engaged in any obvious or overt criminal activity, was found to be in possession of drugs, and this Court determined that the officers did not have reasonable suspicion to justify the stop.
In State v. Hill, 97-1012 (La.App. 4th Cir.9/17/97), 700 So.2d 551,[1] the officers received a tip of drug activity in a specific area, but they were not given names or descriptions of the men involved. The officers arrived at the comer to find two men standing or sitting in front of a building. The men began walking when the officers *133 approached them. The officers stopped the men, frisked them, found nothing, and then ran their names through the police computer. The defendant was found to have an outstanding arrest warrant, and he was arrested. During a search incident to an arrest, a crack pipe containing a trace amount of cocaine was found. This Court held that because the officers did not have reasonable suspicion to stop the defendant, the resultant discovery of the outstanding warrant and the arrest was unlawful.
In State v. Ellington, 96-0766 (La.App. 4th Cir.9/4/96), 680 So.2d 174, a police officer observed a man place something in the right pocket of his pants. The police officer found this activity suspicious and thought that the defendant might be attempting to conceal something. The incident occurred in an area known for drug trafficking and prostitution. Based on his suspicions, the officer stopped the man, conducted a patdown search and recovered a four-inch-long folding knife and a glass vial containing cocaine residue. However, the trial court found the officer did not have reasonable suspicion of criminal activity to justify the stop, patdown search, and seizure of the contraband and granted the defendant's motion to suppress, and this Court affirmed the trial court, finding the facts were not sufficient to justify the stop. This court noted that the officer did not testify that he saw the defendant engaging in what appeared to be a drug transaction, or that he saw a suspicious object which the defendant attempted to conceal. Additionally, this court found that even if the initial stop had been justified, the officer was not justified in conducting a patdown search of the defendant. The officer was only authorized to frisk the outer clothing for a dangerous weapon.
Similarly, in State v. Williams, 572 So.2d 756 (La.App. 4th Cir.1990), police officers saw a man walking with a clasped hand in a high drug-trafficking area. When the man became nervous upon seeing the officers and entered a van, the officers stopped the van. This court found that the officers did not have reasonable suspicion of criminal activity to justify the stop.
In State v. Edwards, 530 So.2d 97 (La. App. 4th Cir.1988), officers on patrol in an area known for narcotics activity noticed the defendant standing on a corner showing a companion an object he held clenched in his hand. The defendant ran when the officers approached. The officers chased him into a store where they saw him take a gun from his waistband and put it under a door. On review of the trial court's granting of the motion to suppress evidence, this Court held that the officers' actions were such that a reasonable man would have interpreted their pursuit as an attempt to capture him or otherwise intrude upon his freedom of movement. Because the officers did not possess reasonable suspicion of criminal activity, the seizure of the discarded object was illegal. The Court stated:
Although a defendant's furtiveness may be highly suspicious and is a factor to be considered in this determination (sic), his flight, nervousness, or startled look at the sight of a police officer, without any relationship to a violation of criminal law, is insufficient to justify an investigatory stop. [Citations omitted].
Applying these principles to the admittedly close facts in the instant case, we conclude that the police officers did not have reasonable cause to make an investigatory stop of the defendant based on a suspicion that he had engaged in a narcotics transaction. Although the defendant's running from the scene upon seeing the officers is a factor to be considered, this flight was is [sic] still insufficient to justify an investigatory stop where the officers did not know what was in defendant's hand, saw no exchange of money, and had not recognized either the defendant or his companion as a known drug dealer.
State v. Edwards, 530 So.2d at 98.
Likewise, in State v. Williams, 621 So.2d 199 (La.App. 4th Cir.1993), the defendant *134 was seen standing in a courtyard of a housing project. On seeing the police officers, he turned and walked away quickly. The officers also noticed that he was "fooling with his belt area." The trial court denied the defendant's motion to suppress the pipe seized after the defendant was stopped and frisked, but this Court reversed the trial court's ruling. This Court found that under these facts the initial stop of the defendant was not justified; furthermore, even if the stop was legal, the officers provided no evidence to justify the subsequent patdown frisk.
The case at bar seems similar to those cited above in which this Court has found that officers did not have reasonable suspicion to stop a person on the street who was simply present in an area known for drug trafficking. In the writ application originally filed in this court after the trial court's denying the Motion to Suppress, Judge Murray, dissenting, summarized the problems:
[I]t is not clear that the officers had reasonable suspicion of criminal activity on the part of the man sitting on the steps to justify a stop of them. The anonymous tip did not contain any description of the men selling drugs. Also, the group was sitting on some steps, not standing in the intersection as indicated by the tip. The only "suspicious" activity to which the officers could point was the fact that the men on the steps were in front of the standing man who ran when the officers arrived. Indeed, had the officers questioned Mr. Sheehan prior to frisking him, they would have learned he was in the area because he lived in the block. Although the officers knew the area for its drug activity, they admitted they did not know Mr. Sheehan, and there was no indication that anyone else in the group was known to them. To justify the initial stop, one must impute the actions of the running man to the rest of the group.
State v. Sheehan, 97-1464 (La.App. 4th Cir.8/12/97), (Judge Murray dissenting, p. 3).
Citing State v. Curtis, 96-1408 (La.App. 4th Cir.10/2/96), 681 So.2d 1287, 1289, the State now argues that the stop was justified on the basis of the anonymous tip, the agents' brief investigation, the reputation of the area, and the reaction of the man who ran on seeing the police officers. In Curtis, this Court did find that the officers' experience and common sense, the reputation of the area, and flight or even a startled look at the sight of the police officers are factors to be considered in determining whether a stop is justified. However, in Curtis the officer received a tip from a reliable confidential informant who gave a description of two men selling drugs at a specific location; when the officers arrived at the spot, they found two men who exactly matching the physical and clothing descriptions given. In the case at bar, only the location of an alleged drug sale was given.
In both language and structure, La. C.Cr.P. art. 215.1 clearly expresses that justification for a stop is separate from justification for a frisk, and more importantly, a valid stop must precede a valid frisk.

THE FRISK:
Assuming the officers were justified in stopping the men sitting on the steps, their justification for frisking the defendant and for opening the package of cigarettes is questionable. There was no testimony that the defendant made any suspicious or hostile movements as they approached him, nor did he try to run. The officers testified that the men were patted down because one of them tried to run.
In State v. Hunter, 375 So.2d 99, 101-102 (La.1979), the Supreme Court explained that a police officer who has justification under La.C.Cr.P. art. 215.1(A) to stop an individual does not thereby have the right to frisk him under La.C.Cr.P. art. 215.1(B). The court stated:

*135 While it is true that an officer is never justified in conducting a patdown for weapons unless the original detention itself was justified, a lawful detention for questioning does not necessarily give the officer the authority to conduct a patdown for weapons. Even after a lawful investigatory stop, a police officer is justified in frisking the subject only under circumstances where a "reasonably prudent man ... would be warranted in the belief that his safety or that of others was in danger." [Cites omitted]. Further, the officer's belief is not reasonable unless the officer is "able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." [Cites omitted]. It is not necessary that the investigating officer establish that it was more probable than not that the detained individual was armed and dangerous; it is sufficient that he establish a "substantial possibility" of danger.
Here, the police were in an area known for drug dealing, and certainly weapons are associated with drug sales. Yet, the defendant was not seen in a drug transaction, nor did he run or appear startled when the police appeared. Furthermore, there was nothing to suggest that he was armed; he did not move as though reaching for a weapon, nor did the police observe a bulge in his clothing, which might indicate a gun or knife.
This Court, in State v. Denis, 96-0956, pp. 7-8 (La.App. 4th Cir.3/19/97), 691 So.2d 1295, 1299, writ denied 97-1006 (La.6/20/97), 695 So.2d 1352, addressed the requirements imposed by La.C.Cr.P. art. 215.1(B) on an officer in the process of stopping a citizen. The Court recognized
police have the right to ensure their own safety in an encounter with a suspected criminal. Under both our federal and state Constitutions, however, this right must be balanced against an individual citizen's right to be free from unreasonable searches. Although sometimes appearing to be a legal technicality, Article 215.1 B represents the legislature's attempt to maintain that balance by allowing the officer, who has lawfully stopped an individual, to perform a pat-down for weapons, but only if he "reasonably suspect that he is in danger."
A police officer's duty to enforce and uphold the laws includes not only those statutes that define and prohibit criminal conduct, but also those, which define and limit the government's intrusion into the lives of its citizens. Unless the plain language of Article 215.1 B is interpreted as authorizing an officer to frisk every pedestrian who is stopped pursuant to subsection A, the only way a court can determine if the officer reasonably suspected that he was in danger is to require him to express that suspicion, and explain upon what it is based. Eliminating the requirement for such articulation not only eviscerates this statute, but also opens the door for potential abuse by the rare officer who acts upon personal prejudices rather than actual observation and experience.
In Denis, where this Court found that the trial court erred in denying the motion to suppress the evidence, the police officer admitted it was his custom to make a patdown/frisk of everyone he stopped and that he had no particular knowledge that the defendant was armed.
Similarly, the trial testimony in the case at bar indicates that the men who were stopped pursuant to C.Cr.P. art. 215.1(A) were frisked as part of the stop. Officer Veit testified that he conducts weapons patdowns on every stop that he makes in order to assure his own safety. He also said that the defendant had committed no crime in his presence. Agent Harry testified that lie removed the package of cigarettes from the defendant's pocket because of his experience with razor blades in cigarette packages.
While it is well settled that a police officer may conduct a pat down when he reasonably believes that he is in danger or that the suspect is armed, we find that in *136 the instant case the officers overstepped their authority in frisking this defendant.

THE SCOPE OF THE SEARCH:
In State v. Parker, 622 So.2d 791 (La. App. 4th Cir.1993), the officer received a tip from a confidential informer that a father and a son were selling drugs from a blue Nissan in front of their residence. The officer went there and found the two men sitting in their car and in possession of contraband. The defendant, a man standing near the car, began to walk away. The officer stopped him and, after arresting the men in the Nissan, patted him down to find a matchbox containing four or five rocks of cocaine. This Court found that the patdown was justified because drugs were found on the men in the Nissan, and the defendant attempted to leave the scene. This Court found that the officer had justification for the patdown, but reversed the trial court's decision on the basis that the officer had no justification for taking a matchbox from the defendant's pocket and opening it in a search for drugs.
In the case at bar, the officer justified the seizure of the cigarette package on the basis that it might contain razor blades. Agent Harry acknowledged that he could not see the cocaine in the package when he took the pack from the defendant's pocket. He said he did not squeeze the pack because if a razor blade were there it would cut his hand. He admitted that the defendant might have had razor blades in his shoes or wallet, and if he so suspected, he would search there for possible weapons. The officer also said weapons are hidden in many places, such as in ties and bandannas; he commented, "I'm a tactical instructor for my office and there are many pens and different things that can be used for weapons." Agent Harry also testified that the defendant was not arrested until the rock of cocaine was found in the cigarette package.
Even under the "plain feel" seizure of contraband exception to the warrant requirement, the contraband must be "immediately apparent" upon mere touching. Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); State v. Denis, 96-0956 (La.App. 4th Cir.3/19/97), 691 So.2d 1295; State v. Lavigne, 95-0204 (La.App. 4th Cir.5/22/96), 675 So. 771, writ denied, 96-1738 (La.1/10/97), 685 So.2d 140; State v. Parker, 622 So.2d 791 (La.App. 4th Cir.1993). In State v. Denis, an officer removed a small bag from the defendant's waistband even though the officer knew it was not a weapon; the officer testified that he suspected that the bag contained drugs. This Court held that the seizure of the bag exceeded the scope of the frisk and was not justified under the plain feel exception.
Similarly, in the case at bar, the officer took the cigarette package because it might contain a razor blade, a potential weapon. When he did not see a razor blade, he opened the pack to look further. Then he noticed a piece of cellophane in the bottom of the package and unwrapped it to find the rock of cocaine. Certainly, law enforcement officers should not have a difficult time associating cigarette packages and cellophane, cigarette packages are wrapped in cellophane. This action seems clearly to exceed the scope of a frisk.
Each step of this case is problematic. The detention stretches the standard for a stop; the frisk was not a check for a weapon in the sense of a knife or gun but was a search for anything that could be used as a weapon; and the scope of the search oversteps the "plain feel" exception. The trial court erred in denying the motion to suppress the evidence. I would reverse the trial court's judgment and vacate the sentence.
NOTES
[1] The Supreme Court recently granted the State's writ application in this case. State v. Hill, 97-2551 (La.4/3/98, 717 So.2d 223).