749 So.2d 767 (1999)
STATE of Louisiana
v.
Tyrone TYLER.
No. 98-KA-1667.
Court of Appeal of Louisiana, Fourth Circuit.
November 24, 1999.
*769 Amy C. Ellender, Louisiana Appellate Project, Mer Rouge, Louisiana, Counsel for Defendant.
Harry F. Connick, District Attorney, Charles E.F. Heuer, Assistant District Attorney, Parish of Orleans, New Orleans, Louisiana, Counsel for Plaintiff.
Court composed of Judge WILLIAM H. BYRNES, III, Judge JOAN BERNARD ARMSTRONG, Judge DENNIS R. BAGNERIS, Sr.
BAGNERIS, Judge.

STATEMENT OF THE CASE
Defendant Tyrone Tyler was charged by bill of information on January 21, 1998 with possession of cocaine, a violation of LSA-R.S. 40:967(C). Tyler pled not guilty at his January 28, 1999 arraignment. After a hearing on February 13, 1998, the trial court denied Tyler's motion to suppress the evidence. On April 21, 1998, Tyler withdrew his not guilty plea and entered a plea of guilty as charged, reserving his right, pursuant to State v. Crosby[1], to appeal the trial court's denial of his motion to suppress the evidence. The State filed a habitual offender bill of information, and Tyler admitted to having been previously convicted of a specific felony offense. The trial court adjudicated Tyler a habitual offender. Tyler waived all delays and was sentenced to thirty months at hard labor. The trial court granted Tyler's motion for appeal.
The record was lodged with this court on July 6, 1998, and supplemented on October 14, 1998, with the transcript of the motion to suppress hearing. Tyler filed his brief on November 3, 1998. The State filed its brief on September 1, 1999.

FACTS
Police Officer Michael Eberhardt, of the New Orleans Police Department, testified that on December 4, 1997, he and his partner, Officer Veit, were investigating a complaint that had been telephoned in to an Alcohol, Tobacco and Firearms ("ATF") hotline regarding activities at the intersection of North Galvez Street and Caffin Avenue. The officers observed Tyler and some other individuals standing in front of a store on that corner; at least one of these individuals was drinking a bottle of beer. The officers stopped the car to advise the men that they were violating a municipal ordinance. Officer Eberhardt testified that when he and his partner exited the vehicle, Tyler and another individual made sudden movements and quickly moved to a car parked in front of the store. Officer Eberhardt noticed that the driver leaned into the car and reached under the seat. Tyler was on the passenger side of the vehicle. Officer Eberhardt testified that he was concerned for his safety, believing that the driver might be retrieving a weapon.
The officers asked the driver and Tyler to step away from the vehicle and come *770 back to the police car. Officer Eberhardt stated that he patted down the driver for weapons. Officer Eberhardt testified that he went to the vehicle and observed two marijuana cigarettes on the driver's side of the vehicle. Officer Eberhardt further stated that he watched his partner, Officer Veit, pat down Tyler for weapons and recover a cigarette pack that contained a crack pipe from his front shirt pocket.
On cross-examination, Officer Eberhardt testified that he believed, but he could not be certain, that Tyler had a bottle of beer, and that there was a six-pack of beer minus one beer inside of the car on the passenger side of the vehicle. Officer Eberhardt testified that he was unaware of any movement made by Tyler to retrieve or conceal anything. However, Officer Eberhardt reiterated that Tyler and the driver acted suspiciously in that, as soon as they saw the police, they moved toward the car.

ERRORS PATENT
A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error, Tyler argues that the trial court erred in denying his motion to suppress the evidence for the following reasons: (1) the police officers did not have reasonable suspicion to stop Tyler; and (2) Officer Veit did not have lawful cause to frisk Tyler and/or go into his pocket.

The Stop
The Fourth Amendment to the United States Constitution and Article 1, Sec. 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. Searches and seizures outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions.
State v. Stan, 97-2195, p. 5 (La.App. 4 Cir. 10/29/97), 703 So.2d 83, 85, writ denied, 97-2852 (La.2/18/98), 709 So.2d 762, quoting State v. Basile, 97-1162 (La.App. 4 Cir. 9/24/97), 700 So.2d 1062, writ denied, 97-2503 (La.12/19/97), 706 So.2d 455.
On trial of a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La.C.Cr.P. art. 703(D); State v. Jones, 97-2217, p. 10 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 395. A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the district court had the opportunity to observe the witnesses and weigh the credibility of their testimony. Jones, supra.
"A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense..." La.C.Cr.P. art. 215.1; State v. Sheehan, 97-2386, p. 3 (La.App. 4 Cir. 12/9/98), 740 So.2d 127, 129; State v. Bentley, 97-1552, p. 7 (La.App. 4 Cir. 10/21/98), 728 So.2d 405, 410 writ denied, 98-3213 (La.5/7/99), 741 So.2d 27. Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989. "Reasonable suspicion" is something less than the probable cause needed for an arrest, and must be based upon particular articulable facts and circumstances known to the officer at the time the individual is approached. State v. Williams, 98-3059, p. 3 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144; State v. Smiley, 99-0065, p. 3 (La.App. 4 Cir. 3/3/99), 729 So.2d 743, 745, writ denied, 99-0914 (La.5/14/99), 743 So.2d 651. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Mitchell, 97-2774, p. 8 (La.App. 4 Cir. 2/3/99), 731 So.2d 319, 326.
In the instant case, Officer Eberhardt testified that he and Officer Veit stopped to investigate the group of individuals standing on the corner for violations of a *771 municipal ordinance relating to drinking from open containers.[2] Officer Eberhardt testified that the driver of the vehicle, who was among the group of individuals on the corner, was arrested for possession of marijuana and for violating the open container ordinance. In addition, Officer Eberhardt at first stated that he "believed" Tyler had a bottle of beer, and that inside of the vehicle, on the passenger side, where Tyler was entering, there was a bag with a six-pack of beer bottles, and one was missing. However, when asked whether he was certain of that fact, Officer Eberhardt stated: "I believe that's correct. I'm not certain of that. No."
Nevertheless, Officer Eberhardt and Officer Veit had reasonable suspicion to believe that a crime  drinking from or carrying an open glass containerwas being committed. Further, the police officers were justified in approaching the group in which Tyler was standing.[3]
The police officers had observed Tyler make a sudden movement and quickly walk to a car in response to seeing them. Flight, nervousness, or a startled look at the sight of police may be one of the factors leading to a finding of reasonable suspicion to stop under La. C.Cr.P. art. 215.1. State v. Poche, 99-0039, p. 6 (La.App. 4 Cir. 1999), 733 So.2d 730, 733. However, such reaction to police presence is not in and of itself enough to give rise to reasonable suspicion to believe a person is committing, has committed, or is about to commit a crime. State v. Lavigne, 95-0204, p. 5 (La.App. 4 Cir. 1996), 675 So.2d 771, 775, writ denied, 96-1738 (La.1/10/97), 685 So.2d 140; State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Thus, based on flight alone, at this point, the officers could not have had reasonable suspicion to stop defendant.
The police officers had lawful cause to stop Tyler's companion, who was observed drinking from and/or carrying an open glass container in violation of the City's open container ordinance. Nevertheless, mere association with someone whom police lawfully stop is insufficient to furnish a reasonable suspicion that the individual is committing, has committed, or is about to commit a crime.
In State v. Slan, 624 So.2d 451 (La.App. 4 Cir.1993), reversed on other grounds, 93-2590 (La.3/3/94), 632 So.2d 749, an undercover officer purchased cocaine with marked currency. The police officers drove away and they observed the defendant talking to Atkins. Both men were subsequently arrested. The marked currency was found only on Atkins. This Court held that police had no reasonable suspicion to stop Atkins, nor probable cause to arrest him.
In State v. Johnson, 94-1170 (La.App. 4 Cir. 8/23/95), 660 So.2d 942, writs denied, 95-2331, 666 So.2d 1092, 95-3044 (La.2/2/96), 666 So.2d 1105, this Court held that police had reasonable suspicion to believe the defendant was engaged in criminal activity where the defendant was in a high drug trafficking area at 1:00 a.m.; he turned and walked away at the sight of police; and he was in the company of an individual who discarded a gun at the sight of police. Thus, something besides mere association is required. The suspicion must be individualized, and the association should be something more than being in the company of a person whose only crime is drinking from an open glass container.

*772 The test for determining whether one has a reasonable expectation of privacy is not only whether the person had an actual or subjective expectation of privacy, but, rather, whether that expectation is of a type which society at large is prepared to recognize as being reasonable. State v. McKinney, 93-1425 (La. App. 4 Cir. 5/17/94), 637 So.2d 1120, writ denied 97-1339 (La.12/19/97), 706 So.2d 444; State v. Lambright, 525 So.2d 84 (La.App. 3 Cir.1988), writ denied 530 So.2d 83 (La.1988).
State v. Sheehan, 97-2386, p. 5 (La.App. 4 Cir. 12/09/98), 740 So.2d 127, 130.
It is reasonable to expect that one can be in the company of a person violating an open container ordinance, yet not be suspected of committing, of having committed, or of being about to commit a crime.
In the instant case, Tyler was with the driver of the car. The driver was observed drinking from an open glass container. The police officers lawfully stopped the driver as he leaned into his car. Officer Eberhardt testified that he and his partner feared for their safety, thinking that the driver might be reaching for a weapon. Tyler was preparing to enter the driver's vehicle as a passenger. Officer Eberhardt was unable to testify whether Tyler made any suspicious moves when he got to the car. Nevertheless, while police had no reasonable suspicion to detain Tyler, their choice was to let him enter the car and remain while they dealt with the driver, or maintain control over him.
This situation can be analogized to the traffic stop of a vehicle carrying a passenger. The U.S. Supreme Court recently held that, when a vehicle is stopped, even for a traffic violation, officers may lawfully order its passengers to exit the vehicle. Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), extending its holding in Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). "The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." Wilson, 519 U.S. at 413, 117 S.Ct. at 886, citing language from Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). The Supreme Court in Wilson further reasoned: "Outside the car, the passengers will be denied access to any possible weapon that might be concealed in the interior of the passenger compartment." Id.
The instant case did not involve an actual traffic stop; however, considering that both the driver and Tyler were preparing to enter the vehicle, and presumably drive off, it is sufficiently analogous. The minimal intrusion in restraining Tyler's liberty until the officers had investigated the driver was far outweighed by the officers' need to insure their safety.
Applying the common-sense reasoning in Wilson, the police officers lawfully ordered Tyler away from the vehicle, back to their vehicle, and maintained control over him while they conducted their investigation of the driver.

The Search
If a police officer stops a person whom he reasonably suspects is committing, has committed, or is about to commit a crime, pursuant to art. 215.1(A), and reasonably suspects he is in danger, the officer may frisk the outer clothing of such person for a dangerous weapon; if the officer reasonably suspects that the person possesses a dangerous weapon, he may search the person. La.C.Cr.P. art. 215.1(B); State v. Curtis, 96-1408, pp. 2-3 (La.App. 4 Cir. 1996), 681 So.2d 1287, 1289. "The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger." State v. Williams, 98-3059, p. 4 (La.App. 4 Cir. 03/03/99), 729 So.2d 142, 144 quoting State v. Smith, 94-1502, p. 5 (La.App. 4 Cir. 1995), 649 So.2d 1078, 1082. As noted by this court in State v. Denis, 96-0956 (La.App. 4 Cir. 3/19/97), 691 So.2d 1295, *773 writ denied, 97-1006 (La.6/20/97), 695 So.2d 1352:
While it is true that an officer is never justified in conducting a pat-down for weapons unless the original detention itself was justified, a lawful detention for questioning does not necessarily give the officer the authority to conduct a pat-down for weapons. Even after a lawful investigatory stop, a police officer is justified in frisking the subject only under circumstances where a "reasonably prudent man ... would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. Further, the officer's belief is not reasonable unless the officer is "able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." Sibron v. New York, 392 U.S. [40] at 64, 88 S.Ct. [1889] at 1903, 20 L.Ed.2d [917] at 935 [1968]. It is not necessary that the investigating officer establish that it was more probable than not that the detained individual was armed and dangerous; it is sufficient that he establish a "substantial possibility" of danger.

State v. Hunter, 375 So.2d 99, 101-102 (La.1979) (final citation omitted).
We recognize that the police have the right to ensure their own safety in an encounter with a suspected criminal. Under both our federal and state Constitutions, however, this right must be balanced against an individual citizen's right to be free from unreasonable searches. Although sometimes appearing to be a legal technicality, Article 215.1 B represents the legislature's attempt to maintain that balance by allowing an officer, who has lawfully stopped an individual, to perform a pat-down for weapons, but only if he "reasonably suspect [sic] that he is danger."
A police officer's duty to enforce and uphold the laws includes not only those statutes that define and prohibit the criminal conduct, but also those which define and limit the government's intrusion into the lives of its citizens. Unless the plan language of Article 215.1 B is interpreted as authorizing an officer to frisk every pedestrian who is stopped pursuant to subsection A, the only way a court can determine if the officer reasonably suspected that he was in danger is to require him to express that suspicion, and explain upon what it is based. Eliminating the requirement for such articulation not only eviscerates this statute, but also opens the door for potential abuse by the rare officer who acts upon personal prejudices rather than actual observation and experience.
96-0956 at pp. 7-8, 691 So.2d at 1299.
In the instant case, Officer Eberhardt testified that he frisked the driver of the vehicle, and Officer Veit frisked Tyler. Officer Veit took a cigarette pack from Tyler's front shirt pocket and found a crack pipe inside. Officer Eberhardt also found two marijuana cigarettes inside the vehicle on the driver's side. The evidence is somewhat unclear as to the sequence of events. Tyler was not charged in connection with the marijuana, although the driver was, and thus Tyler's search cannot be considered as one incidental to his lawful arrest for possession of marijuana.
While Officer Eberhardt stated that he feared the driver might have been reaching inside the vehicle for a weapon, he could not say that Tyler even opened the door of the vehicle. There was no testimony that the police officers felt that Tyler posed a danger to them or others, or that they believed Tyler was armed. Additionally, the police officers did not find any weapons either on the driver of the vehicle or even in the vehicle. There was no evidence that this was a high crime area. There was no evidence that either Tyler or the driver of the vehicle was suspected of drug dealing. And of course, it must be remembered that the only legitimate justification for detaining Tyler in the first place was to prevent him from entering the vehicle, allowing the officers to maintain *774 control over the situation for their safety while the officers investigated the driver in connection with violating an open container ordinance.
Considering the lack of any evidence to justify a reasonable suspicion by the officers that Tyler either posed a danger to themselves or others, or was armed, we conclude that the police officers were not justified in frisking Tyler. Moreover, even assuming that the police officers lawfully frisked Tyler, there is no evidence from which this Court can conclude that the police officers lawfully seized the cigarette pack, which contained the crack pipe, in Tyler's shirt pocket. Nor is there any evidence which allows this Court to conclude that the officers lawfully seized the crack pipe from the cigarette pack.
In State v. Williams, 98-3059, p. 4 (La. App. 4 Cir. 3/03/99), 729 So.2d 142, 144 this Court stated:
[E]vidence discovered during a lawful investigatory frisk may be seized under the "plain feel" exception to the warrant requirement, as explained in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). However, just as the "plain view" doctrine requires that an object's incriminating character be immediately obvious when seen, the "plain feel" doctrine requires the tactile discovery of "an object whose contour or mass makes its identity immediately apparent." Dickerson, at 375, 113 S.Ct. at 2137, 124 L.Ed.2d at 346. Thus, in State v. Parker, 622 So.2d 791 (La.App. 4th Cir.), writ denied, 627 So.2d 660 (1993), the seizure of a matchbox containing cocaine detected during a pat-down search was found not to fall within the "plain feel" exception because there was no evidence that a matchbox's shape was identifiable as contraband. In contrast, in State v. Stevens, 95-501 (La.App. 5th Cir. 3/26/96)[; 672 So.2d 986], 672 So.2d 986, the seizure of the drugs in a matchbox detected during a lawful pat-down was upheld because the officer testified that her prior experience indicated that most street-level crack dealers carried their drugs in a matchbox.
98-3059 at p. 7, 729 So.2d at 144, quoting State v. Denis, 96-0956 (La.App. 4 Cir. 3/19/97), 691 So.2d 1295, writ denied, 97-1006 (La.6/20/97), 695 So.2d 1352.
In State v. Sheehan, 97-2386 (La.App. 4 Cir. 12/9/98), 740 So.2d 127, a police officer lawfully frisking the defendant noticed a partially opened cigarette pack in the defendant's shirt pocket. The officer testified that he searched the cigarette package for a razor blade. This court upheld the search, finding that, based on the officer's "past experience of knowing that razor blades are often concealed in cigarette packs, removing and looking at the cigarette pack was a reasonable intrusion designed to discover a weapon." at p. 8, 740 So.2d at 131.
In State v. Curtis, 96-1408 (La.App. 4 Cir. 10/2/96), 681 So.2d 1287, the defendant was lawfully stopped, based in part, on a tip that he and his companion were selling drugs. As defendant stood with his hands on a wall, waiting to be frisked, he attempted to reach toward the lower part of his right leg. An officer than patted down his leg, detecting a bulge in his sock. The officer retrieved a cigarette pack from the defendant's sock, which had been ripped open, and observed tin foil packets containing heroin inside. This court held that, under these circumstances, considering that the officer saw something other than cigarettes visible inside of the cigarette pack, the seizure was lawful.
In the instant case, there was no evidence presented at the motion to suppress hearing concerning the specifics surrounding Officer Veit's seizure of the cigarette pack and crack pipe inside. Officer Eberhardt, the only witness at the motion hearing, testified that he saw Officer Veit take a cigarette pack, which contained the crack pipe, out of Tyler's shirt pocket. Thus, under these circumstances, it cannot be determined whether the officers lawfully *775 seized the crack pipe from the cigarette pack. Therefore, the State failed to meet its burden of proof showing that the officers lawfully seized the crack pipe pursuant to an exception to the search warrant requirement. Accordingly, the trial court erred in denying the motion to suppress because: (1) the officers had no cause to frisk defendant; and/or (2) even assuming they did, the evidence does not establish that the officers lawfully seized the crack pipe.
This assignment of error has merit.

ASSIGNMENT OF ERROR NUMBER TWO
Tyler argues that the trial court erred in failing to comply with the sentencing mandates of La.C.Cr.P. art. 894.1.
La.C.Cr.P. art. 881.1 provides in pertinent part:
A. (1) Within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
(2) The motion shall be oral at the time of sentencing or in writing thereafter and shall set forth the specific grounds on which the motion is based.
* * *
D. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
La.C.Cr.P. art. 881.2 provides in pertinent part:
A. (1) The defendant may appeal or seek review of a sentence based on any ground asserted in a motion to reconsider sentence. The defendant also may seek review of a sentence which exceeds the maximum sentence authorized by the statute under which the defendant was convicted and any applicable statutory enhancement provisions.

* * *
The failure to file an oral or written motion to reconsider sentence precludes a defendant from raising a claim about his sentence on appeal. State v. Martin, 97-0319, p. 1 (La.App. 4 Cir. 10/1/97), 700 So.2d 1322, 1323; State v. Green, 93-1432, pp. 5-6 (La.App. 4 Cir. 4/17/96), 673 So.2d 262, 265-66, writs denied, 96-1131, 96-1248 (La.10/4/96), 679 So.2d 1379, 1380.
In the instant case, Tyler failed to file a motion to reconsider sentence or object to the sentence in any way. Thus, he failed to reserve this assignment for appeal. Accordingly, he is precluded from raising the claim that the trial court failed to follow the mandatory provisions of La. C.Cr.P. art. 894.1.
There is no merit to this assignment of error.

CONCLUSION
Considering the jurisprudence and the governing federal and state laws, we find that the police officers had no lawful cause to search Tyler. Thus, the trial court erred in its denial of Tyler's motion to suppress. Therefore, we reverse the trial court's denial of the motion to suppress, as well as Tyler's conviction and sentence. This case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
BYRNES, J., concurs in part and dissents in part.
ARMSTRONG, J., concurs in the result.
BYRNES, J., concurring in part & dissenting in part:
Ultimately I concur with the majority to reverse the trial court's denial of Tyrone *776 Tyler's motion to suppress evidence; however, I respectfully dissent in part based on my conclusion that the officers were justified in making an investigatory stop and making a safety pat-down search of the defendant Tyrone Tyler. However, there was insufficient evidence to show that Officer Veit lawfully seized the cigarette pack containing the crack pipe pursuant to an exception to the search warrant requirement.
The officers were investigating a hotline complaint, when they saw Tyler and another individual in a group of people drinking beer from open containers. When they noticed the police in the area, Tyler and his companion made suspicious movements towards a parked vehicle. The companion leaned over into the driver's side of the car and reached under the seat. Tyler was on the passenger side. Officer Michael Eberhardt testified that he patted down Tyler's companion who was arrested for violation of the open container law. Officer Eberhardt looked into the car with a flashlight and saw what he believed to be marijuana in plain sight in the car. Officer Veit frisked Tyler and found a cigarette pack with a crack pipe in Tyler's shirt pocket.

INVESTIGATORY STOP
A law enforcement officer may stop a person in a public place whom he reasonable believes is committing, has committed, or is about to commit an offense. La.C.Cr.P. Art. 215.1. "Reasonable suspicion" for an investigatory stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient articulable facts within his knowledge to justify an infringement of the suspect's rights. State v. Gervais, 546 So.2d 215 (La.App. 4th Cir.1989); State v. Vance, 93-1389 (La.App. 4 Cir. 2/25/94), 633 So.2d 819.
In State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879, 881, the Louisiana Supreme Court found that: "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken so long as the circumstances, viewed objectively, justify that action," citing Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723-1724, 56 L.Ed.2d 168 (1978). Even if the officers do not articulate reasons justifying a stop and search, the officers need "articulable facts" taking into account the entire picture.
In State v. Huntley, 97-0965, p. 3 (La.3/13/98); 708 So.2d 1048, 1049, the Louisiana Supreme Court stated:
In making a brief investigatory stop on less than probable cause to arrest, the police "`must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The police must therefore "articulate something more than an "`inchoate and unparticularized suspicion or "hunch."'" United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest. The police need have only "`some minimal level of objective justification....'" Sokolow, 490 U.S. 1, 7, 109 U.S. at 1585 (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). A reviewing court must take into account the "totality of the circumstancesthe whole picture," giving deference to the inferences and deductions of a trained officer that might well elude an untrained person. Cortez, 4[4]9 U.S. at 418, 101 S.Ct. at 695. The court must also weigh the circumstances known to the police `not in terms of library analysis by scholars, but as understood *777 by those versed in the field of law enforcement.' Id." [Emphasis added.]
In State v. Ganier, 591 So.2d 1328 (La. App. 4 Cir.1991), police officers were patrolling a housing project in New Orleans known to be a center of drug trafficking. The juvenile saw the officers, turned "suspiciously", began to walk away slowly, and then began to run. The officers chased the defendant until he was apprehended. This court found that two factors were sufficient to justify a stop of the defendant: the area's reputation for drug trafficking, and the suspicious actions of the defendant. This court noted:
... Drug activity and crimes which it generates have become a major problem endangering innocent people and severely taxing police resources. Although an innocent individual who has nothing to hide from police might flee so that such flight would be irrational, the action of fleeing in itself is inherently suspicious and justifies an investigation by a police officer exercising common sense. This is not a case of a man merely standing on a street corner who is detained by the police simply because he is there. State v. Ganier, 591 So.2d at 1330. [Emphasis added.]
Deference should be given to the experience of the policemen who were present at the time of the incident. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549. A certain look or gesture may not mean anything to the ordinary person; however, a policeman has sound judgment based on long experience to interpret these acts. An officer should react for his safety under the conditions and events as they occur.
I disagree with the majority's conclusion that at the time the police had no reasonable suspicion to detain Tyler. The officer believed but could not be certain that Tyler was drinking from an open container. Given the officer's experience, he was justified in making the investigatory stop of the defendant Tyler who was seen with a group of individuals drinking from open containers, and Tyler made sudden suspicious movements towards the parked car.
Although the actions of the subjects may have been innocent if considered individually, under the totality of the circumstancesthe whole picture, giving deference to the inferences and deductions of a trained officer that might well elude an untrained person, the officers had reason to justify the investigatory stop.

LIMITED FRISK
La.C.Cr.P. art. 215.1(B) provides for a limited frisk for weapons during an investigatory stop:
When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger. State v. Smith, 94-1502 p. 5 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082. It is clear that an officer may make a protective search of the suspect for his own safety and the safety of others. State v. Davis, 92-1623 (La.1994), 637 So.2d 1012, cert. denied, Davis v. Louisiana, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994).
In State v. Curtis, 681 So.2d 1287 (La. App. 4 Cir.1996), this court noted:
Common sense dictates that a police officer should be permitted to pat-down a suspect who reasonably appears to be dealing drugs. We can take notice that drug traffickers and users have a violent lifestyle, which is exhibited by the criminal element who are generally armed due to the nature of their illicit business. Therefore, a police officer should be permitted to frisk a suspect following an *778 investigatory stop (based on reasonable suspicion) relating to drug activities. The police officers acted reasonably on information, which proved accurate.
Id. at 1292.
In State v. Wartberg, 586 So.2d 627 (La. App. 4 Cir.1991), this court noted that any person who is suspected of dealing drugs is probably armed with a weapon and officers need not refer to specific particular facts concerning the danger to their safety.
In the present case, Officer Eberhardt properly patted down Tyler's companion because he was in violation of the open container law where it is illegal to drink alcohol from an open container under the municipal ordinance, New Orleans City Code § 54-404 (1995). Officer Eberhardt stated that: "I was concerned that he might be retrieving a weapon. I ordered both men to move away from the vehicle." Considering Tyler and his companion's sudden movements towards the vehicle, and the fact that the companion had an open container, Officer Eberhardt properly frisked the companion pursuant to his arrest.
Officer Eberhardt testified that during that time, he went to the car and with a flashlight, and he saw what he believed were two marijuana cigarettes in plain view on the driver's side of the car. This articulable factor, that drugs were involved, provided a reason for the officers to fear for their safety. This factor supports the officers' concern for their safety and the necessity for a frisk of the defendant Tyler as well as his companion. Given the facts and circumstances known to the officers and because weapons and violence are commonly associated with illegal drug activity, the officers could reasonably infer that Tyler was armed and dangerous, thus justifying the pat-down of the defendant Tyler.

"PLAIN FEEL" EXCEPTION
Although the officers had reasonable suspicion for an investigatory stop and safety pat-down of the defendant Tyler, there is insufficient evidence to determine if this case could fall within the "plain feel" exception recognized in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Under Dickerson, when a police officer lawfully pats down a suspect's clothing for weapons and feels an object whose contour or mass makes its identity immediately apparent to be contraband, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons.
In State v. Lavigne, 95-0204 (La.App. 4 Cir. 5/22/96), 675 So.2d 771, writ denied, 96-1738 (La.1/10/97), 685 So.2d 140, a crack pipe was lawfully seized because it was immediately apparent to the officer that the object felt like a crack pipe based on the officer's sense of touch.
In State v. Curtis, supra, this court held that contraband can be seized from a pack of cigarettes. The officer reasonably suspected the subject was involved in criminal activity and could be armed. The officer was entitled to conduct a search for weapons. When the suspect reached toward his leg, the officer was justified in investigating the bulge in the suspect's sock. Upon removing the object, the officer discovered a partially opened pack of cigarettes. The officer determined that the pack of cigarettes contained something other than cigarettes. This court found that based on the totality of circumstances, the officer had probable cause to believe that the cigarette pack contained contraband, and seizure of the contents of the cigarette pack was justified.
In the present case, Officer Eberhardt testified; however, his testimony was insufficient to determine the circumstances surrounding Officer Veit's pat-down search of the defendant Tyler, and seizure of the cigarette pack and crack pipe inside Tyler's shirt pocket. Accordingly, I concur with the majority in reversing the ruling of *779 the trial court's denial of Tyler's motion to suppress the evidence.
NOTES
[1] 338 So.2d 584 (La.1976).
[2] New Orleans City Code § 54-404 (1995) prohibits any person from carrying or drinking from any opened glass or metal container in or on any public street or sidewalk in the city.
[3] But see State v. Hoye, 94-0445 (La.App. 4 Cir. 4/14/94), 635 So.2d 1289, where this court affirmed the trial court's grant of the defendant's motion to suppress evidence seized after defendant was initially approached by police because he was violating the city open container ordinance. Hoye should be viewed as strictly limited to its facts.