LANDRIEU, Judge.
Defendants, Rusty 0. Skipper and Leonard C. Fant, were charged by bill of information with possession of cocaine, a violation of La.Rev.Stat.Ann. § 40:967 (West 1992). Both Skipper and Fant pleaded not guilty. Skipper filed a motion to suppress the evidence, and it was continued several times. Although the record discloses that the motion was dismissed, no hearing was apparently ever held.[1] The defendants’ motions for separate trials were granted.
When Skipper’s jury retired to deliberate, counsel for Fant moved to suppress the evidence in his case. A hearing was held on the motion immediately, and it was denied. Fant then pled guilty as charged reserving his right to appeal pursuant to State v. Crosby, 338 So.2d 584 (La.1976). Waiving all delays, Fant was sentenced to serve two and one-half (2½) years at hard labor to run concurrently with case number 354-715.[2]
A six-member jury found Skipper guilty of attempted possession of cocaine, a lesser included offense.[3] He was sentenced to serve two and a half (2½) years at hard labor and ordered to pay court costs of $161.50 or serve an additional thirty days in default of payment.
Pursuant to a multiple bill hearing, the trial court vacated the original sentence imposed and resentenced the defendant under the provisions of La.Rev.Stat.Ann. § 15:529.1 (West 1992) to serve four (4) years at hard labor. He was further ordered to pay court costs or serve an additional thirty days in default of payment.
Claiming the trial court erred in denying their individual motions to suppress, the defendants now appeal.
*859 PACTS
At Skipper’s trial, Officers Bernard Butler and Sheldon Polk testified that on February 13, 1991 at approximately 9:00 p.m., they were on routine patrol in a marked police unit. As they turned from Thalia Street onto Baronne Street, they noticed two men standing close to each other in front of 1409 Baronne, one building away from the corner.[4] When one of the men, later identified as Skipper, noticed the police car, he took a few abrupt steps and threw a matchbox over a fence. Immediately thereafter, the officers exited their car and detained the men. Officer Butler jumped over the fence and retrieved the matchbox which contained six rocks of cocaine. Officer Polk patted down Fant and discovered another matchbox which contained two rocks of cocaine. Thereafter, the two defendants were arrested.
Stennis May testified for the defense that he knew Skipper when they worked together at the Marriott Hotel. He stated that, on the night in question, he was standing on the sidewalk talking to Skipper when Fant drove up and exited his car. Skipper asked Fant if he was in possession of drugs. When Fant replied yes, both men began walking away in opposite directions. It was at this juncture that the police drove up and stopped all three men. Upon discovering a matchbox in Fant’s possession, the officers transported all three men to the Sixth District station. While at the station, one of the officers went into another room and returned with a second matchbox. When neither Skipper nor May would admit to possessing it, the officers decided to arrest Skipper and release May.
While the jury was deliberating Skipper’s case, the trial court heard testimony as to Fant’s motion to suppress. Officer Polk testified that he approached the defendants after he observed Skipper’s movements. He noted that the two men were talking at the time, but he did not see them exchange anything. Sensing that he may be in danger because of the high crime area, Officer Polk conducted a pat-down search on Fant. A matchbox was discovered in Fant’s right hand pocket. Noting that perpetrators often carry “razor blades or other sharp objects” in matchboxes, Officer Polk looked inside the matchbox and discovered two pieces of cocaine.
Officer Butler testified that the officers stopped the defendants after he observed Skipper notice them, turn to walk away, and toss a matchbox over a fence. While Officer Polk detained both men, Officer Butler retrieved the matchbox Skipper had discarded. Officer Butler further testified that Fant was detained for safety reasons.
DISCUSSION

ERRORS PATENT:

Our review reveals no errors patent.

ASSIGNMENT OF ERROR

Each defendant argues in a separate brief that the trial court erred in denying his motion to suppress the evidence.[5] Specifically, Skipper argues that the police did not have reasonable suspicion to detain him and that at the time he abandoned the property, a stop was imminent. The State, however, submits that the property was abandoned without any prior unlawful intrusion into Skipper’s right to be free from governmental interference.
The first matchbox containing the contraband was seized after Skipper abandoned it. It has long been held that property cannot be seized legally if it was abandoned pursuant to an infringement of the person’s property rights. However:
if ... property is abandoned without any prior unlawful intrusion into a citizen’s right to be free from governmental interference, then such property may be lawfully seized. In such cases, there is no expec *860 tation of privacy and thus no violation of a person’s custodial rights.
State v. Belton, 441 So.2d 1195, 1199 (La. 1983), ceri. denied Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
The authorization for a temporary stop by a police officer of a person in a public place is set forth in La.Code Crim.Proc.Ann. art. 215.1 (West 1991), which provides in part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
See also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir.1990); State v. Jones, 483 So.2d 1207 (La.App. 4th Cir.1986), writ den. 488 So.2d 197 (1986). As this court noted in Johnson,
“Reasonable suspicion” is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect’s rights. State v. Jones, supra. Mere suspicion of activity is not a sufficient basis for police interference with an individual’s freedom. State v. Williams, 421 So.2d 874 (La.1982)
Johnson, 557 So.2d at 1033.
In State v. Hall, 555 So.2d 495 (La.App. 4th Cir.1989), writ denied State ex rel Hall, 577 So.2d 44 (La.1991), this Court concluded that police officers were justified in seizing foil packets which police officers recognized from their experience as a commonly used method of packaging narcotics. This Court relied on Texas v. Davis, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). In Davis, the defendant was stopped by a police officer at a routine driver’s license checkpoint. Shining a flashlight into the defendant’s vehicle, the officer saw a green balloon drop from the driver’s hand. The officer then observed in the glove compartment some plastic vials, loose white powder, and an open bag of party balloons. From past experience, the officer knew that party balloons were commonly used to package narcotics. The Court found that the seizure was proper because the officer had probable cause to believe that the balloon contained an illicit substance. Likewise, in Hall, we found that the officer had probable cause to believe that the cellophane bag which contained numerous small foil packets contained contraband.
In State v. Davis, 555 So.2d 633 (La.App. 4th Cir.1989), rev. in pari on other grounds, State v. Bell, 566 So.2d 959 (1990), this court concluded that evidence was properly seized under the plain view exception. In Davis, a police officer testified that he saw a tightly-wrapped white package on the console inside a vehicle, which, from his experience he believed to be cocaine. This Court held that “based on Officer La Roche’s personal experience, there was probable cause to believe that the tightly wrapped white package contained cocaine.”
In State v. Clark, 612 So.2d 232 (La.App. 4th Cir.1992), the officers were on routine patrol when they saw the defendant walking across the street. From the illumination of the police ear’s lights, the officer observed a tinfoil-wrapped cigarette in the defendant’s hand, which from the officer’s experience he believed may have contained a marijuana cigarette soaked in PCP. After the defendant crossed the street, he entered a car parked at the curb. The officers stopped their car parallel to and behind the car Clark entered. They exited their car, and asked the defendant to exit his. The defendant opened the door but took some time actually exiting. As the officers repeated their order, the defendant dropped his hand out of the car and tossed something shiny under the car. He then got out of the car. The officers looked under the car, and retrieved a tinfoil-wrapped cigarette which was found to contain marijuana soaked in PCP. Thereafter, the officers placed the defendant under arrest. Based upon this evidence, this Court concluded that the trial court did not err by finding that there was a reasonable suspicion of criminal activity to stop the defendant. Thus, the officers could lawfully seize the PCP-laced marijuana cigarette which he abandoned pursuant to this stop.
*861 In the instant case, Officer Butler testified that the officers turned the corner on routine patrol and immediately observed the two defendants standing close to each other. They were the only two people on the street. Upon seeing a police car approaching, Skipper immediately turned around, took a couple of steps inside a yard, and discarded a matchbox across the fence. Thereafter, he exited the yard and stood next to Fant. Officer Butler further testified that he knew a matchbox to be a “common thing used for drugs, for selling drugs on the street.”
As in Clark, the trial court did not err by finding that there was reasonable suspicion of criminal activity to stop the defendants.[6] Thus, the officer could legally seize the cocaine which Skipper abandoned.
Skipper argues State v. Britton, 621 So.2d 890 (La.App. 4th Cir.1993), writ granted 629 So.2d 373 (La.1993) in opposition. The instant case is readily distinguishable from Britton in that when the defendant abandoned the cocaine no seizure had occurred. Unlike Britton where the police officers followed the defendant into a store and a reasonable person would have felt detention to be imminent, here the officers simply rounded a corner on routine patrol. Immediately upon seeing a marked police unit, the defendant abandoned the cocaine. There is no indication that a reasonable person feels detention to be imminent every time a police car turns the corner.
Having determined that the stop of Skipper and Fant and the seizure of the abandoned cocaine were lawful, we must next consider whether the seizure of the second matchbox from Fant’s pocket was lawful. Officer Polk testified that when he patted Fant down, he could feel that the object in his pocket was a matchbox. Officer Butler had already returned with the matchbox he had retrieved and had determined that it contained cocaine. Since Polk had seen the two men talking only moments before, he had probable cause to believe that the matchbox in Fant’s pocket also contained cocaine. The seizure of the second matchbox was therefore lawful. Accordingly, this assignment of error is without merit.
For the foregoing reasons, the defendants convictions and sentences are affirmed.
AFFIRMED.

. The ADA suggested at trial that the motion hearings were abandoned by the defense.

. Case number 354-715 involved the defendant being a convicted felon in possession of a firearm.

.The trial minute entry states that the defendant was found guilty as charged. However, the verdict signed by the foreperson of the jury states that Skipper was found guilty of attempted possession of cocaine.

. According to Officer Butler's testimony, the • defendants were standing directly underneath a street light.

. Skipper’s motion was, as discussed above, "dismissed” without a hearing. The State has suggested that the defense moved for the dismissal of the motion. Nevertheless, for purposes of this argument, each of the defendants’ motions will be treated as if it was denied on the merits.

. This conclusion is reached as to both defendants because they were seen in close proximity to each other, and were, according to the officers, the only two men in the vicinity. Because the officers testified that matchboxes are often used in selling drugs, there was reasonable suspicion to stop both men. Further noting the high crime area in which the defendants were detained, Officer Polk had reason to conduct a pat-down search of Fant. Pursuant to La.Code Crim.Proc.Ann. art. 215.1, an officer once he has stopped a suspect, may frisk the suspect's outer clothing and may even conduct a full search if he reasonably believes the suspect has a dangerous weapon.