784 So.2d 781 (2001)
STATE of Louisiana
v.
Keenan P. ROBINSON.
No. 2000-KA-1050.
Court of Appeal of Louisiana, Fourth Circuit.
April 11, 2001.
*784 Harry F. Connick, District Attorney of Orleans Parish, Nicole Brasseaux Barron, Assistant District Attorney, New Orleans, Counsel for Plaintiff/Appellee.
Karen G. Arena, Louisiana Appellate Project, River Ridge, Counsel for Defendant/Appellant.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge STEVEN R. PLOTKIN, and Judge DAVID S. GORBATY.
PLOTKIN, J.
Keenan P. Robinson was convicted of attempted possession of a firearm while in possession of a controlled and dangerous substance, and was sentenced to six years at hard labor without benefit of parole, probation or suspension of sentence, as a second felony offender. Defendant appeals his conviction, asserting two assignments of error. For the reasons that follow, we vacate defendant's conviction and sentence and remand the case for a new trial.

STATEMENT OF THE CASE
On October 29, 1999, a bill of information was filed charging defendant with violating La. R.S. 14:95(E) relative to possession of a handgun while in the possession of crack cocaine.[1] Defendant was arraigned on November 10, 1999 and pled not guilty. On November 22, 1999, counsel for defendant waived his motions for a preliminary hearing and discovery.[2] On December 1, 1999, a jury found defendant guilty of attempted possession of a firearm while in possession of a controlled and dangerous substance. The trial court ordered a pre-sentence investigation. On February 1, 2000, the trial court sentenced defendant to serve six years at hard labor in the custody of the Department of Corrections. The State filed a bill of information charging the defendant with being a multiple offender, and defendant admitted to identity. The trial court found defendant to be a second felony offender and sentenced him to serve six years at hard labor without the benefit of parole, probation, or suspension of sentence pursuant to La. R.S. 15:574.5. Defendant's motion to reconsider the sentence was denied and this appeal ensued.

STATEMENT OF FACT
On September 22, 1999, Sergeant Sherman Joseph and Officer Robert Hickman were on proactive patrol around 1:15 in the afternoon. As they entered the intersection of North Tonti and St. Ann, they noticed a red Chevrolet occupied by three young black males. The young men appeared to be of school age, and the officers thought they were possible truants. Because it was a weekday afternoon, the officers decided to stop the young males to ascertain their ages and names, to determine if they were truants. The two officers *785 testified that they stopped the vehicle and ordered the young men to exit the vehicle. While exiting the vehicle, Antoine Jackson, who was sitting in the front passenger seat, placed his hand up to his mouth as if to put something in his mouth. Sergeant Joseph asked Antoine Jackson what he was chewing; he then ordered him to spit it out. Antoine Jackson spat out a clear piece of chewed plastic with a white substance that the officer thought was cocaine. Sergeant Joseph advised Antoine Jackson that he was under arrest for possession of crack cocaine.
At the time that the vehicle was stopped, defendant, Keenan Robinson, was seated somewhere in the rear of the vehicle. Officer Hickman testified that defendant was seated in the rear on the driver's side of the vehicle while Sergeant Joseph testified that defendant was seated in the rear seat on the passenger's side of the vehicle.
After arresting the passenger, Sergeant Joseph proceeded to search defendant and Charles Hensley, the driver. While patting down defendant, Sergeant Joseph discovered that defendant was carrying a semi-automatic pistol in the right rear pocket of his blue jean shorts. Sergeant Joseph removed the weapon, which was loaded with five live rounds, and then advised defendant that he was under arrest for carrying a concealed weapon. A further search incident to the arrest revealed that defendant was also carrying some crack cocaine in his front right pocket.[3] The officers found no contraband or weapons on Charles Hensley, the driver.
Neither the State nor the defense questioned Sergeant Joseph concerning his reasons for conducting a pat down search of defendant. However, Officer Hickman testified that after seeing that drugs were recovered from one of the other subjects, the officers became concerned for their safety. For this reason, defendant and Charles Hensley were searched. Officer Hickman admitted, however, that defendant did not make any threatening movements, nor was defendant abusive.
Officer Hickman and Sergeant Joseph testified that it was later discovered that the three males were between the ages of eighteen and nineteen. When asked the age limit for being enrolled in school, Sergeant Joseph stated that he thought it was age eighteen, but he admitted that he was not positive. After counsel informed him that the age limit was sixteen and asked if anybody in the car looked sixteen, Sergeant Joseph stated that they all looked pretty young.
Sergeant Joseph testified that after the car was stopped, and he had a chance to observe the young males, he recognized defendant. He remembered arresting defendant five months prior for trespassing in association with some narcotics. Sergeant Joseph testified that he never went to court on that case, and he did not know if it was accepted for prosecution.
The parties stipulated that the evidence allegedly seized from defendant tested positive for cocaine.
Defendant testified that he was in the car with his friends, Antoine Jackson and Charles Hensley, on the day in question. The young men were stopped at a traffic sign when the officers passed by, saw them, then turned around. The officers jumped out of their vehicle and ran around on both sides of the car. The officers *786 ordered the young men out of the car. As soon as defendant stuck his hand out the door of the car, he was handcuffed to Charles Hensley and was told to get on his knees.
Defendant denied having a gun and/or drugs on his person at the time he was searched by Sergeant Joseph. He also testified that he did not see Antoine Jackson with any gun or drugs, and he never knew Charles Hensley to have drugs around him. To his knowledge, there were no drugs in the car. Defendant admitted to being arrested by Sergeant Joseph for trespassing approximately six months prior to the current incident; however, he insisted that he was not arrested for possessing drugs. He pled guilty to the charge of trespassing.
Defendant testified that prior to this incident, Sergeant Joseph had harassed him on several occasions. On one occasion, Sergeant Joseph threatened to place drugs on him. Sergeant Joseph never placed drugs or guns on him on the prior occasions. However, the second time Sergeant Joseph stopped him he told him, "three strikes, I'm out." He understood this to mean that the next time Sergeant Joseph stopped him, he would get him. Defendant stated that he and his companions no longer hung around people who sold drugs. He denied ever participating in such bad activities.

ERRORS PATENT
A review of the record reveals no errors patent.

DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, defendant argues that his counsel was ineffective for waiving motions prior to trial and for failing to object at trial to the admissibility of the gun and drugs allegedly found on defendant. He argues that this evidence was seized as a result of an unlawful search and seizure.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Johnson, 557 So.2d 1030, 1033 (La.App. 4 Cir.1990). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Landry, 499 So.2d 1320, 1324 (La.App. 4 Cir.1986).
Defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. See also State v. Fuller, 454 So.2d 119 (La.1984). Defendant must show (1) that counsel's performance was deficient and (2) that the deficiency prejudiced the defendant. Id. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Id. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992).
*787 The record contains sufficient information to rule on the merits of defendant's claim that his counsel was ineffective for failing to pursue a motion to suppress the narcotics and gun allegedly recovered from his person.
Defendant argues that defense counsel was ineffective for failing to question the admissibility of the evidence, particularly in light of the fact that the vehicle was stopped on the basis of a statute with which at least one officer was not adequately acquainted. Further, he argues that no reason existed for searching him in the absence of any indication that he was armed, dangerous, or acting suspiciously.
Officers have specific authority to briefly detain and question certain juveniles pursuant to La. Ch.C. art 733.1, which provides in relevant part:
Art. 733.1. Stop of child absent from school; transportation to school facility
A. In addition to the authority provided in Article 736, a peace officer, probation officer, or school attendance officer may briefly detain any child from the age of seven through sixteen whom the officer reasonably believes to be absent from school during normal school hours and the officer may question the child about his reasons for being absent.
Pursuant to this provision, an officer has the authority to detain a child between the ages of seven and sixteen whom he reasonably believes may be a truant.
The defendant and his companions were all eighteen years of age or older, whereas the truancy law only applies to juveniles between the ages of seven and sixteen. Whether Officer Hickman was aware of the correct legal age to be considered a truant is unknown. Neither the State nor defense counsel questioned him concerning his knowledge of the correct legal age for truancy. Officer Hickman testified that he would not have stopped the defendant if he had known that he was nineteen. He stated that the males looked young enough to be truants.
Sergeant Joseph, while admitting that he was not positive of the legal age to be considered a truant, stated that he thought the legal age was eighteen. Defendant argues that because at least one arresting officer was not cognizant of the correct legal age to be considered a truant, no basis existed for determining whether he or his companions were truants. Accordingly, he maintains that the officers lacked reasonable suspicion to detain him.
There is nothing in La. Ch.C. Art. 733.1 which requires that an officer know for certain that a youngster is definitely within the age range covered by the truancy law. Both officers noted that the males looked very young. Further, no testimony was presented to show that Officer Hickman did not know the correct legal age for being considered a truant. The requirement for detaining a person under the truancy law requires is explained in the comments to La. Ch.C. Art. 733.1. The comments to this article states in relevant part:
[T]he provisions of this Article fully comply with the Supreme Court's ruling in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Paragraph A requires reasonable belief of truancy for the officer's initial approach of the child. According to the compulsory school attendance law, R.S. 17:221, a child between the age of seven through seventeen must attend school unless: the child has sooner graduated from high school or a sixteen year old has his parent's written permission to withdraw from school prior to graduation. If the officer's suspicions are not dispelled during *788 this initial encounter, only then is the officer authorized to detain the child further by taking him to a school or school facility. (emphasis added)
Pursuant to La. Ch.C. Art. 733.1, officers may stop juveniles whom they reasonably believe are in violation of the truancy law. The youthful appearance of defendant, along with the fact that he was riding in a vehicle with other youthful looking males during school hours, gave the officers reasonable cause to detain him for questioning concerning his age and the circumstances surrounding his absence from school.
The fact that Sergeant Joseph did not know the correct age for determining truancy may very well raise serious questions as to how he determines whom to stop for truancy. If there was evidence that the officer tried to use the truancy law to stop whomever he wished, one might question the reasonableness of his belief. However, there is nothing in the record to cast doubt on the officer's testimony that he actually believed the young men were truants. Further, during the trial the jurors had an opportunity to observe defendant and form their own opinion as to whether defendant resembled a school age youth. This argument has no merit.
Next, defendant alleges counsel was ineffective for not pursing a motion to suppress because the requisites for conducting a patdown search for weapons were not met. Defendant argues that even if the officers had reasonable suspicion to detain him, they had no basis for searching him simply because his companion was caught trying to chew or swallow some crack cocaine. He argues that his case is indistinguishable from State v. Tyler, 98-1667 (La. App. 4 Cir. 11/24/99), 749 So.2d 767, wherein this Court held that officers had no basis for frisking a defendant who was stopped and frisked merely because he was in the presence of a suspect carrying an open container in violation of the open container law.
In State v. Tyler, officers observed the defendant and some other people standing in front of a store on a corner. At least one member of the group was drinking a bottle of beer. The officers stopped their car to advise the men that they were violating a municipal ordinance. When the officers exited their vehicle, Tyler and another person in the group made sudden movements and quickly moved to a car parked in front of the store. The driver of the car leaned into it and reached under the seat. Tyler was on the passenger side of the vehicle. The police officers testified they were concerned for their safety, believing that the driver might be reaching for a weapon. In discussing the validity of the stop of the defendant Tyler, this Court stated:
The police officers had lawful cause to stop Tyler's companion, who was observed drinking from and/or carrying an open glass container in violation of the City's open container ordinance. Nevertheless, mere association with someone whom police lawfully stop is insufficient to furnish a reasonable suspicion that the individual is committing, has committed, or is about to commit a crime.

Tyler, p. 6, 749 So.2d at 771. This Court concluded that, for their safety based on the actions of the defendant's companion, the officers were justified in ordering the defendant away from the vehicle. However, this Court also concluded that there was no basis for a frisk of the defendant Tyler, who had not made movements as if he had a weapon. Because the State had failed at the motion hearing to show that this search was justified under an exception to the warrant requirement, this Court found that the trial court erred *789 when it denied the motion to suppress evidence.
At first glance Tyler appears to mandate a finding that while the officers' approach of the defendant in the instant case was lawful, the subsequent search was questionable. However, this case is noticeably different from Tyler in one important respect, i.e., this is not an open container law case. This is a drug and weapons possession case. The defendant's companion was caught attempting to chew a white powder resembling cocaine, an illegal drug.
Officer Hickman testified that once the officers discovered that Antoine Jackson was attempting to dispose of cocaine by chewing it, the officers became concerned for their safety. The jurisprudence supports the finding that in cases involving drug users and/or traffickers, officers may reasonably be concerned about the presence of weapons.
In State v. Curtis, 96-1408 (La.App. 4 Cir. 10/2/96), 681 So.2d 1287, this Court stated:
Common sense dictates that a police officer should be permitted to pat-down a suspect who reasonably appears to be dealing drugs. We can take notice that drug traffickers and users have a violent lifestyle, which is exhibited by the criminal element who are generally armed due to the nature of their illicit business. Therefore, a police officer should be permitted to frisk a suspect following an investigatory stop (based on reasonable suspicion) relating to drug activities.
Id. at pp. 9-10, 681 So.2d at 1292.
Once the officers observed the attempt by Antoine Jackson to hide an illegal drug, the officers had reasonable cause to believe Mr. Jackson was committing an offense. Accordingly, the officers unquestionably had cause to detain Mr. Jackson under La.C.Cr.P. art. 215.1 which provides in relevant part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions. (emphasis added)
Once an officer stops a person pursuant to art. 215.1(A), the officer may conduct a limited pat down frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. La.C.Cr.P. art. 215.1(B). Accordingly, the officers had the authority to make a protective search of Mr. Antoine for their own safety and the safety of others. State v. Curtis, 96-1408 (La.App. 4 Cir. 10/2/96), 681 So.2d 1287; State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, cert. denied, Davis v. Louisiana, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994). Also see State v. Wartberg, 586 So.2d 627, 628 (La.App. 4 Cir.1991), wherein this Court noted that a reasonably cautious policeman was entitled to fear that a subject who is suspected of dealing drugs could be armed and dangerous, and that the officer was justified in searching for weapons for his safety and for the safety of other officers.
The issue of whether the officers then have the authority to search a companion is not so clear-cut, particularly if the companion appears to be nothing more than an innocent companion. An officer need not be absolutely certain that a lawfully stopped individual is armed before conducting a frisk, but the officer must be warranted in his belief that his safety or that of others is in danger. State v. Jones. 99-0861 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 38. Thus, various courts have upheld searches of defendants who were detained along with a companion found to possess drugs.
*790 In State v. Lightfoot, 580 So.2d 702 (La. App. 4 Cir.1991), the defendant was with several others in front of a house where several drug arrests had been made. When the defendant and one of his companions saw the police, they walked quickly away. The companion had what appeared to be a plastic wrap containing cocaine dangling from his hand. He refused to stop when requested by the police and put the plastic wrap in his mouth. He dropped another small plastic packet containing white powder. The companion continued to refuse to put his hands on the police car, which resulted in a fight with the police during which he coughed up the plastic bag containing crack cocaine. Then the police turned to the defendant in order to do a pat down search, and during this frisk the defendant threw down a rock of cocaine. This Court concluded,
In light of these facts and the surrounding circumstances, the late night, the dangerous area known to the officers for heavy drug trafficking, the fact that there were three suspects and only two police officers, the altercation with one of the suspects and the officers' knowledge at that moment that drugs were involved, we find that Officer Watske could have reasonably suspected that his safety and that of Officer DeJean could have been in danger and therefore, he was justified in conducting a pat down of defendant....
Id. at 705.
In State v. Green, 586 So.2d 639 (La. App. 4 Cir.1991), police officers on patrol in a marked vehicle received notification of a drug deal. The officers parked their vehicle out of sight and walked to the location so that they would not be seen. When they were within approximately twelve feet, they observed the defendant standing with a man named Jones. Another person approached Jones and a drug transaction occurred. The defendant did not participate in the transaction. Nevertheless, the officers approached all of the men and placed them against a car in order to do a frisk for weapons. The drug buyer had a rock of cocaine concealed in his hand. The defendant, while his hands were on the car, opened his right hand and dropped cocaine. The defendant was then placed under arrest. The trial court suppressed the evidence. This Court reversed, stating:
Because the defendant was with Williams and Jones during the drug purchase in a high drug trafficking area, the officers were justified under these circumstances to conduct a pat-down search of the three men under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See State v. Landry, 393 So.2d 713 (La.1981). Therefore, the seizure of the cocaine which the defendant abandoned because of that justified pat-down search was legal.
Id. at 640.
Similarly, in State v. Skipper, 92-2357 (La.App. 4 Cir. 2/11/94), 632 So.2d 857, this Court considered the issue of whether the seizure of a matchbox containing cocaine from a co-defendant's pocket was lawful. In Skipper, two police officers were on routine patrol when they noticed two men standing close to each other in front of a building near the corner of an intersection. When one of the men, later identified as Skipper, saw the car, he took a few abrupt steps and threw a matchbox over the fence. The officers immediately exited their car and detained the men. One officer jumped over the fence and retrieved the matchbox that contained six rocks later found to be cocaine. Another officer patted down the second man, identified as Fant, and discovered another matchbox that contained two rocks also determined to be cocaine. The two defendants were *791 arrested and charged with possession of cocaine. In determining whether the seizure of the second matchbox from Fant's pocket was lawful, this Court stated:
Having determined that the stop of Skipper and Fant and the seizure of the abandoned cocaine were lawful, we must next consider whether the seizure of the second matchbox from Fant's pocket was lawful. Officer Polk testified that when he patted Fant down, he could feel that the object in his pocket was a matchbox. Officer Butler had already returned with the matchbox he had retrieved and had determined that it contained cocaine. Since Polk had seen the two men talking only moments before, he had probable cause to believe that the matchbox in Fant's pocket also contained cocaine. The seizure of the second matchbox was therefore lawful. (emphasis added)
Id. at pp. 7-8, 632 So.2d at 861.
In State v. Johnson, 98-0264 (La.App. 1 Cir. 12/28/98), 728 So.2d 885, the First Circuit concluded that a patdown search of the defendant's clothes was justified by the fact that an officer had legally frisked one of the defendant's companions and found drugs. In Johnson, the police had received a tip from an anonymous telephone caller indicating that three black males and one black female were selling drugs on a particular corner. The police received several similar complaints throughout the day. Upon arriving at the stated location, the officer observed individuals meeting the description given by the anonymous caller. The officer accosted the individuals and called them over. After searching one of the individuals for weapons, the officer discovered drugs on him. The officer then frisked the defendant for weapons and discovered a small object in his top pocket. According to the officer, the defendant told him to go ahead and check the object. The object turned out to be a rock of cocaine wrapped in a piece of napkin. The court found that based on the totality of the circumstances the officer had justification for an investigatory stop. The court further concluded that the discovery of drugs on the defendant's companion corroborated the anonymous tip of drug activity and provided reasonable suspicion to search the defendant.
These cases seem to allow searches of persons closely associated with companions found in possession of drugs. Under the reasoning and holding of these cases, it is not readily apparent that the evidence in the instant case was unconstitutionally seized. Defendant was one of three individuals present in the vehicle wherein one of the passengers was found to be in possession of illegal drugs.
The present case is clearly distinguishable from State v. Tyler. When defendant's companion, Antoine Jackson, attempted to dispose of cocaine in the presence of the officers, the officers had reasonable cause to search him for other contraband and/or weapons. The discovery of drugs on defendant's companion changed the nature of the detention and gave the officers reasonable suspicion to search the companion and other riders in the vehicle, including defendant. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER 2
In his second assignment of error, defendant argues that counsel was ineffective for failing to request a mistrial because of the numerous references to other crimes evidence.
In the instant case, the record contains sufficient evidence to rule on the merits of defendant's claim that his counsel was ineffective for failing to move for a mistrial when the State made reference to other *792 crimes allegedly committed by him. Specifically, defendant complains because during closing argument, the State told the jury that at some point in time defendant had earned a living by selling cocaine. Defendant notes that the State presented no evidence at trial to show that he earned a living by selling cocaine. Further, he argues that this erroneous misrepresentation was nothing more than the continuation of a pattern designed to prejudice the jury against him by painting him as a seller of drugs.
Defendant argues that the prosecutor and the prosecutor's witness continuously tried to poison the jury against him throughout the trial by making improper references to other crimes. He recounts two other instances prior to closing argument wherein the prosecutor made references to other crimes. In the first instance, Sergeant Joseph was asked during cross-examination about his previous arrest of the defendant for trespassing. The officer volunteered that the trespassing offense involved narcotics activity. In the second instance, defendant avers that the prosecutor persisted in implying he was formerly engaged in drug use despite the fact that he only testified that he used to hang around people who engaged in the use of narcotics, but that he no longer hung around such people. Coupled with the final instance, where the prosecutor told the jury in closing argument that the defendant was a drug dealer, defendant argues a mistrial would have been warranted if requested by defense counsel. Thus, failure to ask for one was both deficient and prejudicial.
In the first instance, the court correctly denied the defense counsel's motion for a mistrial when Sergeant Joseph stated that he arrested defendant in association with some narcotics activity. The decision to elicit information concerning defendant's prior arrest by Sergeant Joseph was made by defense counsel. The defense's primary argument was that the police officers planted the weapon and drugs on him. In support of this defense, defendant testified that Sergeant Joseph had threatened to plant drugs on him if he arrested him again. The decision to elicit information from Sergeant Joseph about the prior arrest was apparently directed at giving credibility to defendant's claim that Sergeant Joseph was attempting to harass him. Basically, this questioning was part of the defense's trial strategy. The response concerning defendant's arrest in connection with narcotics was made when defense counsel asked the following question, "[d]o you remember arresting him some five months before that time for trespassing?" The statement was responsive to a question that suggested that defendant had only been arrested for trespassing. Sergeant Joseph's response was obviously aimed at clarifying the true nature of the arrest being referred to by the defense. Accordingly, no basis for a mistrial existed at that time.
In the second instance, defendant made an ambiguous statement in response to a question regarding his knowledge of drugs in the car in which the three men were riding. When asked about his knowledge of drugs in the vehicle, defendant stated, "[w]e don'twe don't reallywe just stay around a lot of people who be doing that. We don't do it no more, especially". When questioned about what the "it" was that he no longer did, defendant clarified what he really meant by stating, "I wasn't really doing nothing, I just used to be around them too much." The only inference to be drawn from the questions and responses was that defendant formerly hung around with drug dealers, but he did not sell drugs. The record does not support a finding that the prosecutor *793 was attempting to imply that defendant was a drug dealer by pursuing this line of questioning. Rather, the prosecutor was attempting to allow defendant to explain his answer concerning his knowledge of drugs being in the vehicle.
The record reveals that during closing argument, defense counsel objected when the prosecutor remarked that defendant should be convicted because he did not graduate from high school, failed to obtain his GED, and "[a]t some point was earning a living by selling crack cocaine." Defense counsel objected to the comment, noting that it was far outside the evidence presented at trial. The trial court sustained defendant's objection to the remark. However, defense counsel failed to move for a mistrial, or even for an admonition, and the court gave no admonition. Instead, the court merely stated, "I'll sustain your objection to the last comment, Mr. Meyer."
Although it does not appear that this comment was part of a continuing effort by the State to demonstrate to the jury that defendant was a drug dealer, the comment clearly violated La.C.Cr.P. art. 774, which provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
No evidence was admitted at trial to show that defendant had previously earned a living by selling cocaine. Accordingly, the comment was improper.
The State argues that the comment was not unduly prejudicial to defendant. The State notes that when defense counsel objected to the comment, the State explained that the comment was based upon its interpretation of the evidence presented at trial. The State notes that defense counsel objected to the comment as being outside the evidence presented, and the trial court sustained the objection. According to the State, the court indicated its agreement with defense counsel's statement that the comment was outside the evidence by sustaining the objection. For this reason, the State intimates that defense counsel made a tactical decision not to ask for an admonishment or a mistrial since the jury was well aware from defense counsel's comments and the agreement by the judge that both disagreed with the State's interpretation of the testimony and evidence. There is nothing in the record to support any of the State's inferences or suggestions. It is unknown why the defense failed to request a mistrial particularly when a mistrial was mandated pursuant to La.C.Cr. P. art. 770(2), which provides:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
Pursuant to the aforementioned article, a mistrial is required when the prosecutor refers to other crimes by the defendant as to which evidence is not admissible. In the instant case, it is not readily apparent why the prosecutor chose to portray defendant as a person who earns a living as a drug dealer. Nevertheless, the comment *794 in closing argument that defendant formerly earned a living as a drug dealer was clearly in violation of La.C.Cr. P. art. 770(2), as well as La.C.Cr.P. art. 774.
Because there was no evidence introduced at trial to indicate that defendant was a drug dealer, the prosecutor's closing argument comment was an impermissible reference to another crime. La.C.Cr.P. art 770 mandates the granting of a motion for a mistrial whenever the prosecutor refers to "other crimes" as to which evidence is inadmissible.
However, a mistrial is a drastic remedy that should be granted only when the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. See State v. Berry, 95-1610, p. 7 (La.App. 1 Cir. 11/8/96), 684 So.2d 439, 449, writ denied, 97-0278 (La.10/10/97), 703 So.2d 603. Thus, notwithstanding the mandatory language of La.C.Cr.P. art 770, an improper reference to other crimes is subject to the harmless error rule for purposes of appellate review. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 101; State v. Simmons, 98-841 (La.App. 5 Cir. 6/1/99), 738 So.2d 1131, 1136, writ denied, 99-2419 (La.4/20/00), 760 So.2d 333.
A reviewing court may declare an error harmless beyond a reasonable doubt if it finds the verdict actually rendered in the trial was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993); State v. Vale, 96-2953, p. 2 (La.9/19/97), 699 So.2d 876, 877; State v.Code, 627 So.2d 1373, 1384-85 (La.1993), cert. denied, Code v. Louisiana, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994). In cases wherein the evidence overwhelmingly demonstrates the defendant's guilt, courts have found references to the commission of other crimes to be harmless error. In State v. Simmons, 98-841 (La.App. 5 Cir. 6/1/99), 738 So.2d 1131, writ denied, 99-2419 (La.4/20/00), 760 So.2d 333, an improper reference in closing argument to the defendant killing the victim to protect the turf where he sold drugs was held to be an impermissible reference to another crime. The appellate court held that the trial court's failure to grant a mistrial was error. However, the court concluded the error was harmless where the trial court gave a strong admonition to the jury to disregard the statement and where the evidence against the defendant was overwhelming. Likewise, in State v. Johnson, 92-1458 (La.App. 4 Cir.1993), 622 So.2d 845, where the evidence against the defendant was strong and unrebutted, this Court found that a reference to other crimes was harmless.
Defendant cites State v. Boutte, 93-1249 (La.App. 3 Cir. 4/6/94), 635 So.2d 617, to support his contention that a mistrial was mandated in this case. In Boutte the prosecutor, in closing argument, kept referring to the defendant as a person who thought he could ride around selling crack cocaine. After the prosecutor stated that the defendant could not be allowed to ride around the parish selling crack cocaine, defense counsel finally objected to the comments noting that there had been no evidence that the defendant had sold or attempted to sell crack cocaine. Defense counsel noted that the prosecutor had repeatedly and prejudicially argued that the defendant was doing this. After the trial court overruled the objection, defense counsel failed to request an admonition or a mistrial. The court found that he was not required to do so to preserve his rights on appeal because it would have been useless. Citing State v. Smith, 418 So.2d 534 (La. 1982), the court stated that La.C.Cr. art. 770 conclusively determines that a reference to another crime as to which evidence is not admissible is prejudicial. The court *795 went on to state that it appeared the prosecutor was simply caught up in the heat of the moment when he repeatedly made reference to the defendant selling crack cocaine. Finding that the defendant was prejudiced by the repeated reference to other crimes as to which evidence was not admitted, the court found the defendant was entitled to a mistrial under La.C.Cr.P. art. 770(2).
Boutte was decided prior to State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, wherein the Court made it clear that introduction of inadmissible other crimes evidence is a trial error subject to harmless error analysis on appeal. Accordingly, it is not at all clear that Boutte is still viable. More importantly, the trial court in Boutte overruled defense counsel's objection to evidence of other crimes, while the court in the instant case sustained the objection to the remarks about other crimes. Thus, it is possible that one could have argued that the jury in Boutte was led to believe the evidence of other crimes could expressly be considered.
However, in State v. Lockett, 99-0917 (La.App. 1 Cir. 2/18/00), 754 So.2d 1128, the court concluded that improper admission of other crimes evidence was not harmless and reversed the defendant's conviction for possession of cocaine. In Lockett, two police officers testified unequivocally that they saw the defendant drop a plastic bag of cocaine as he exited his vehicle after traffic stop. However, the defendant's mother testified that she heard her younger son, who had fled the vehicle along with his companion immediately after it was stopped, tell his companion that he had dropped some cocaine. At trial, the defendant denied possessing cocaine. His testimony contradicted that of the two police officers who stated that they saw him drop the plastic bag containing cocaine. The gist of the defense was that the defendant's brother dropped the cocaine when he fled from the vehicle into his mother's apartment.
At trial, the court allowed the State to introduce evidence that the defendant had a prior conviction for possession of cocaine. The appellate court concluded that it was error to admit this evidence. In response to the State's argument that the error was harmless in view of its strong case, the court stated:
In arguing for a harmless error application in this case, the state first points out the strength of its case, particularly the eyewitness testimony of two police officers who observed the defendant drop the bag of cocaine. The state also contends that, since the defendant testified, the evidence of the prior drug conviction could have been admitted anyway for impeachment of his credibility. While the state's case was strong, it nevertheless depended on the jury making a credibility determination between the police officers and the defendant. The prejudice to the defendant's credibility created by this erroneous introduction of another drug conviction cannot be measured. It certainly cannot be ruled out that the jury rejected his version of the arrest because they decided that he was a bad man who had committed another drug offense in the past. (emphasis added)
Id. at pp 6-7, 754 So.2d at 1132.
In the instant case, defendant's sole defense was that the gun and drugs were planted. However, both officers testified that the gun and drugs were found on defendant. As in Lockett, the State's case depended on the jury making a credibility determination between the police officers and the defendant. It could be argued that the jury may have rejected defendant's version of the arrest because *796 they believed the State's allegation that defendant formerly earned a living by selling drugs. However, it is not clear that the comment concerning defendant previously earning a living by selling drugs did not influence the jury in making its credibility determination. Yet, defense counsel failed to request a mistrial or an admonition to counteract the prejudicial effect of the erroneous misrepresentation that defendant previously earned a living by selling cocaine.
There is nothing in the record to support the State's argument that the failure to request a mistrial or even an admonition was a tactical decision on the part of defense counsel. The State's contention that the jury was aware that the trial court agreed with defense counsel that the State's interpretation of the evidence was far outside the evidence produced, is nothing more than speculation. Although the trial court sustained defense counsel's objection to the comment, the court failed to explain its reasons for sustaining the objection. In the absence of an admonition, the prejudice caused by the failure to request a mistrial was further aggravated. Accordingly, we find that the trial counsel's failure to request a mistrial and/or admonition severely prejudiced defendant to the extent of depriving him of a fair trial. Had a mistrial been requested, it would have been reversible error to deny it under the circumstances of this case. Thus, we find that counsel's failure to request a mistrial was not harmless.
This assignment of error has merit.

CONCLUSION
For the foregoing reasons, we vacate defendant's conviction and sentence and remand the case for a new trial.
VACATED AND REMANDED.
NOTES
[1] Count two of the same bill of information charged his co-defendant, Antoine Jackson, with possession of cocaine.
[2] That same date, his co-defendant, Antoine Jackson pled guilty as charged. He was later sentenced to serve five years at hard labour without the benefits of probation, parole, or suspension of sentence. Special conditions were imposed.
[3] It is not clear just how much cocaine defendant had in his pocket. Officer Hickman testified that Sergeant Joseph found a plastic bag with numerous white rock like substances believed to be crack cocaine in defendant's right front pocket. Sergeant Joseph seemed to suggest he recovered one large piece of cocaine from defendant's pocket.