J^STEVEN R. PLOTKIN, Judge.
There are two issues in this appeal. The first is whether the trial court erred in denying the defendant’s motion for a mistrial, which was based on the prosecutor’s remark in closing argument suggesting that this was not the first time the defendant had sold heroin. The second issue is ineffective assistance of counsel for failing to impeach a prosecution witness.

PROCEDURAL HISTORY

The defendant-appellant, Kedrick Lewis, and his codefendant, John Collins, were indicted on one count of violating La. R.S. 40:966(A) relative to distribution of heroin. The defendant entered a not guilty plea; his motion to suppress was denied after a hearing. On March 31, 1999 the defendants appeared for trial. Collins elected a judge trial while Lewis chose to proceed with a jury. After all the testimony was heard, the jury was unable to reach a verdict and a mistrial was declared as to Lewis. The trial court found Collins guilty of simple possession of heroin.
On November 30, 1999 the defendant again went to trial before a twelve-person jury. This time the jury was able to reach a verdict, finding the defendant guilty as charged. He was sentenced to serve life | ¡.imprisonment at hard labor without the benefit of probation or suspension of sentence. The defendant’s motion to reconsider sentence was denied.

STATEMENT OF THE FACTS

On July 10, 1998 members of the New Orleans Police Department were conducting a “buy-bust” operation in the Second District. Detective Adam Henry was acting in an undercover capacity with D.E.A. Agent Catherine Butler. The officers targeted the 1200 block of Eagle Street, an area about which hotline complaints of narcotics sales had been received. Detective Henry drove down Plum Street, turning onto Eagle, at which time he was flagged down by John Collins. Detective Henry, who was driving the car in which Agent Butler was the passenger, entered into a discussion with Collins about buying cocaine. Detective Henry then told Collins he would rather purchase heroin. Collins indicated that he could provide heroin, and Detective Henry asked for “two papers” which was the street term for two twenty- *1079 five dollar hits of heroin. At that time, the appellant, Kedrick Lewis, was standing at the rear passenger side of the undercover officers’ vehicle. He walked around the officers’ car, talking with Collins, asking if he “got this”. Collins and Lewis then walked across the street together. Collins waited by the steps of a house while Lewis went inside. When Lewis came back out, the two men walked back across the street. As they were crossing, Lewis apparently handed a plastic bag to Collins. Collins gave the bag to Detective Henry in exchange for five ten-dollar bills. These bills had previously been photocopied and date and time stamped.
The vehicle in which Detective Henry and Agent Butler were driving had audio and video recording equipment. Also, the vehicle had a Kel set by which the undercover officers could transmit audio to other officers involved in the operation, including Detective Harrison who was acting as a spotter. laDetective Harrison, who was positioned approximately one-half block to the rear of Henry, was able to observe Collins approach the undercover officers’ vehicle. Detective Harrison testified at trial that he saw Collins and Lewis walking across the street, Lewis entering the house, then exiting, and handing an object to Collins as they crossed the street. After the transaction between Collins and Detective Henry was finished, Detective Harrison saw Collins and Lewis walk to a store at the corner of Oak and Eagle Streets. Detective Harrison relayed a description of the men to the support units.
Sergeant Pat Brown and Detective Paul Toye, acting as a back-up unit, responded to the report of the location and description of the suspects who had sold narcotics. They entered the grocery store and observed the defendant and John Collins. They informed the two suspects that they were under investigation, gave them their Miranda rights, and removed them from the store. Polaroid photos of the two suspects were made. Those photos were then taken to Detectives Henry and Harrison who independently identified them as depicting the men involved in the drug sale. The two defendants were arrested. In a search incidental to arrest, the five ten-dollar bills which had been photocopied prior to the commencement of the buy-bust operation were found on Kedrick Lewis.
In addition to the testimony of Detectives Henry, Harrison, and Toye, and Sergeant Brown, the videotape made by the equipment in Detective Henry’s vehicle was played for the jury. According to Detective Henry, Lewis was shown on the videotape twice speaking with Collins, as well as handing an object to Collins. Joseph Tafaro, a criminalist with the New Orleans Police Department, testified at trial that he analyzed a white powder found in two foils inside a plastic envelope and that the powder tested positive for heroin.

|,¡ERRORS PATENT

According to the minute entry of sentencing, the trial court imposed a life sentence without the benefit of probation, parole, or suspension of sentence. Also, the commitment form executed by the trial court states that the sentence is to be served without the benefit of probation, parole, or suspension of sentence. A prohibition against parole is not required by the substantive statute for which the defendant was convicted, La. R.S. 40:966(A), and thus the sentence appears illegal. However, a review of the sentencing transcript shows that the trial court did not state that the defendant’s sentence was to be served without the benefit of parole. When there is a conflict between the transcript and the minute entry, the transcript controls. State v. Randle, 98-1670 (La.App. 4 Cir. 12/22/99), 750 So.2d 353. *1080 Therefore, the actual sentence imposed on the defendant was legal. Nevertheless, because the commitment form and minute entry are the documents provided to the Department of Corrections, the trial court is ordered to correct those documents to conform to the transcript by deleting any reference to the denial of parole eligibility.

ASSIGNMENT OF ERROR NUMBER 1

In his first assignment of error, Lewis contends that the trial court erred when it failed to grant his motion for a mistrial during the prosecutor’s closing argument.
The objection came after the prosecutor stated, “Lewis was in charge of this operation, providing what was needed by Mr. Collins to make his business go. And who knows how long this has been going on, selling. A couple of foils one time, a few foils another time.” Initially, the basis for the objection was made in a bench conference. The court noted that the basis would be placed on the record after the jury retired to deliberate. After the | ¿jury left the courtroom, the judge noted that the defendant’s contemporaneous objection was preserved and then had the defense counsel place on the record what his objection had been. Defense counsel explained that he objected and moved for a mistrial based upon the prosecutor’s reference to inadmissible evidence of other crimes, specifically that the defendant and Collins might have sold heroin previously. Counsel stated that there was no evidence presented as to such other crimes, but it would be inadmissible in any event and so a mistrial was warranted. The court noted that it was overruling the objection because it had instructed the jury that what the lawyers said was not evidence, and furthermore, the State had moved on to other areas of argument as soon as the objection was made. Also, the court found the remark was not so prejudicial as to require a mistrial.
La.C.Cr.P. art. 770(2) provides:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
[[Image here]]
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
Pursuant to Article 770, a mistrial is required when the prosecutor refers to other crimes by the defendant as to which evidence is not admissible. However, as noted in State v. Robinson, 00-1050, p. 20 (La.App. 4 Cir. 4/11/01), 784 So.2d 781, 794, “a mistrial is a drastic remedy which should be granted only when the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. See State v. Berry, 95-1610, p. 7 (La.App. 1 Cir. 11/8/96), 684 So.2d 439, 449, writ denied, 97-0278 (La.10/10/97), 703 So.2d 603.” The determination of whether actual prejudice has occurred, and thus whether a mistrial is warranted, lies within the sound discretion of the trial judge, and this decision will not be overturned on appeal absent an abuse of that discretion. State v. Wessinger, 98-1234, p. 24 (La.5/28/99), 736 So.2d 162, 183, cert. denied, Wessinger v. Louisiana, 528 U.S. 1050, 120 S.Ct. 589, 145 L.Ed.2d 489 (1999).
Here, the appellant argues that the comment made by the prosecutor is analogous to that made in State v. Vanderlinder, 552 So.2d 1274 (La.App. 5 Cir.1989), which resulted in the defendant’s conviction being reversed on appeal. There, in rebuttal argument, the prosecutor made reference *1081 to the defendant having been involved with drugs before without having been caught; no evidence of this had been presented during trial. However, the decision in Vanderlinder to reverse the defendant’s conviction was based on the court’s belief that a violation of La.C.Cr.P. art 770(2) was “a per se violation of a statutory right” and thus a mistrial was mandatory without regard to the degree of prejudice. State v. Vanderlinder, 552 So.2d at 1276. The court in Vanderlinder relied upon this Court’s decision in State v. Andrews, 527 So.2d 411 (La.App. 4 Cir.1988), in which the prosecutor made comments during rebuttal argument which implied that the defendant had previously been arrested, thus giving him a motive to commit an aggravated battery on the victim, who was the wife of a police officer. Finding that the prosecutor’s remarks constituted references to other crimes, this Court rejected the application of a harmless error analysis, finding that a mistrial was mandatory as a per se violation of the defendant’s rights. State v. Andrews, 527 So.2d at 414.
|7Both Vanderlinder and Andrews were decided before the Louisiana Supreme Court held that a reference to inadmissible other crimes evidence is subject to a harmless error analysis despite the mandatory language in Art. 770. See State v. Johnson, 94-1379, p. 2 (La.11/27/95), 664 So.2d 94, 96, in which the court held that the improper admission of other crimes evidence was a “trial error” and that “courts must evaluate the prejudicial effect of such errors under the harmless error principles established in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) and Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).” Thus, notwithstanding the mandatory language of La.C.Cr.P. art 770, an improper reference to other crimes is subject to the harmless error rule for purposes of appellate review. State v. Robinson, 00-1050 (La.App. 4 Cir. 4/11/01), 784 So.2d 781; State v. Simmons, 98-841 (La.App. 5 Cir. 6/1/99), 738 So.2d 1131, writ denied, 99-2419 (La.4/20/00), 760 So.2d 333. A reviewing court may declare an error harmless beyond a reasonable doubt if it finds the verdict actually rendered in the trial was surely unattributable to the error. Sullivan v. Louisiana; State v. Vale, 96-2953, p. 2 (La.9/19/97), 699 So.2d 876, 877; State v.Code, 627 So.2d 1373, 1384-85 (La.1993).
In the instant case, the trial court found that the prosecutor’s comment that the defendant and Collins might have sold heroin before was not so prejudicial as to warrant a mistrial. The court noted that the State did not refer to the matter again after the defendant objected. The court’s general charge to the jury contained an admonition that the argument of counsel was not to be considered evidence. Furthermore, Detective Henry had already testified without objection to the fact that the officers were targeting the 1200 block of Eagle Street because of phone complaints of narcotics sales in |sthat block. Finally, the jury was aware that the defendant was found in possession of the money used to make the buy from Collins. Considering the other evidence in the case, the brief comment by the prosecutor did not influence the jury in its finding that the defendant was a principal to the distribution of the heroin to the undercover officer.

ASSIGNMENT OF ERROR NUMBER 2

In his second assignment of error, the appellant contends his counsel was ineffective because he failed to impeach Detective Henry with testimony given at the first trial, which resulted in a mistrial.
As noted in State v. Brauner, 99-1954, p. 16 (La.App.2/21/01), 782 So.2d 52, 63:
*1082 Generally, the issue of ineffective assistance of counsel is a matter more properly raised in an application for post-conviction relief to be filed in the trial court where an evidentiary hearing can be held. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Sparrow, 612 So.2d 191 (La.App. 4 Cir.1992). Only when the record contains the necessary evidence to evaluate the merits of the claim can it be addressed on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Kelly, 92-2446 (La.App. 4 Cir. 7/8/94), 639 So.2d 888, writ denied 94-2087 (La.1/6/95), 648 So.2d 921. The present record is sufficient to evaluate the merits of defendant’s claim.
Under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant must show that his counsel’s performance was deficient and that deficient performance prejudiced him. With regard to counsel’s performance, the defendant must 'show that counsel made errors so serious that counsel was not functioning as “counsel” guaranteed by the Sixth Amendment. As to prejudice, the defendant must show that counsel’s errors were so serious as to deprive the defendant of a fair trial, i.e. a trial whose result is reliable. Id., 466 U.S. at 687, 104 S.Ct. at 2064. Both showings must be made before it can be found that the defendant’s conviction resulted from a breakdown in the adversarial process that rendered the trial result unreliable. Id. A claim of ineffective assistance may be disposed of on the finding that either of the Strickland criteria has not been met. State v. James, 555 So.2d 519 (La.App. 4th Cir.1989), writ denied 559 So.2d 1374 (La.1990). If the claim fails to establish either prong, the reviewing court need not address the other. Murray v. Maggio, 736 F.2d 279 (5th Cir.1984).
|cilf an error falls within the ambit of trial strategy, it does not establish ineffective assistance of counsel. State v. Bienemy, 483 So.2d 1105 (La.App. 4th Cir.1986). Moreover, hindsight is not the proper perspective for judging the competence of counsel’s decisions because opinions may differ as to the advisability of a tactic; and, an attorney’s level of representation may not be determined by whether a particular strategy is successful. State v. Brooks, 505 So.2d 714 (La.1987), cert. denied Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
In Brauner, the defendant’s counsel was alleged to be ineffective because he did not impeach the victim with testimony from the pretrial motion hearing; this Court found that any differences were minor and the decision not to impeach may have béen a trial strategy.
Here, the appellant points to only one alleged inconsistency between Detective Henry’s testimony at the first and second trials. At the first trial, the detective was asked by the prosecutor if he observed Kedrick Lewis give anything to Collins as they were across the street, “or was that out of your sight?” Defense counsel immediately objected to this, as the detective had just given a narrative account of what transpired; during that narrative the detective had not specifically stated that he saw Lewis hand anything to Collins. The trial court sustained the objection, and the witness did not answer. The prosecutor then tried again by asking the detective if he saw “any hand-to-hand transactions between the two defendants,” to which question the defense counsel lodged an objection as leading. Again, the trial court sustained the objection. The prosecutor then asked Detective Henry, “What did you see as the two defendants when [sic] they were across the street with *1083 each other?” The defense counsel’s objection based on repetitiveness was overruled, and the detective stated:
Once Mr. Lewis came off the porch and back into my visual through my rearview mirror, he and Mr. Collins then walked across the street and I couldn’t see exactly what was l10given, but once Mr. Collins, turned around, I saw him walk toward me with the piece of plastic in his hand.
The appellant contends that this testimony directly conflicts with the direct testimony of Detective Henry at the second trial that, “[wjhile they’re crossing the street, Mr. Lewis hands Collins a plastic bag.”
A review of the cross-examination of Detective Henry indicates that defense counsel made a strategic decision in the second trial not to closely question him about what he observed the defendant doing. Instead, the cross-examination of the detective was directed to emphasizing the fact that the only person viewed near the detective’s car was Collins. Counsel may not have wanted to give Detective Henry an opportunity to state that he saw Collins moving in such as to create a clear inference that Lewis had handed him an object. Counsel may have hoped that the videotape would make more of an impression on the jury than the brief testimony of Detective Henry would.
Furthermore, Detective Henry was not the only witness to testify that Lewis handed an object to Collins. Detective Harrison testified he was only a half a block away from Detective Henry’s vehicle. Detective Harrison testified on direct examination that the defendant came out of his house, met back with Collins, and handed him an object. Detective Harrison gave slightly more detañed testimony than Detective Henry with regard to the actions of Collins and Lewis as they crossed the street. Notably, defense counsel also chose not to cross-examine Detective Harrison on what he observed the defendant and Collins doing; instead he established that the videotape was an accurate representation of what occurred and simply asked general questions about the roles of the various officers involved in the incident.
InA trial strategy, even if it proves unsuccessful, does not give rise to an ineffective counsel claim. State v. Brooks, 505 So.2d 714 (La.1987). Here, the trial attorney made a decision to argue the lack of evidence of his client’s involvement by emphasizing the videotape. To do so, he chose not to closely cross-examine Detectives Henry and Harrison about their observations because this may have given them an opportunity to add to their direct testimony and thus emphasize it to the jury.

CONCLUSION

The conviction is affirmed. The sentence is amended to delete any reference to the denial of parole eligibility, and as amended, affirmed. The case is remanded to the district court for correction of the minute entry of the sentence.
AMENDED; AFFIRMED AS AMENDED, AND REMANDED.